**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**UNITED STATES CURRENCY IN THE AMOUNT OF $228,536.00,
Defendant–Appellant.**

**Appeal of Edward A. PARKER,
Claimant–Appellant.**

**No. 279, Docket 89–6110.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 20, 1989.
Decided Feb. 7, 1990.

Frederick J. Scullin, Jr., U.S. Atty. for N.D.N.Y. (John G. Duncan, Asst. U.S. Atty., on the brief) for plaintiff-appellee.

Frank Policelli, Utica, N.Y. (Kenneth P. Ray, Utica, N.Y., on the brief) for claimant-appellant.

Before MESKILL and WINTER, Circuit Judges, and LASKER, District Judge.*

LASKER, Senior District Judge, sitting by designation:

This appeal presents the novel question whether the Due Process clause of the Fifth Amendment requires a court, before accepting a plea of guilty to a crime, to inform the defendant that the government might at some later time institute a civil *in rem* forfeiture proceeding against the

---

* Hon. Morris E. Lasker, Senior District Court Judge of the United States District Court for the Southern District of New York, sitting by designation.

fruits or instrumentalities of that crime.[1]

Edward Parker appeals from a judgment entered in the United States District Court for the Northern District of New York (McAvoy, D.J.) ordering forfeiture of money seized from his property during a state drug investigation. We hold that because the forfeiture was not a direct consequence of his criminal conviction the court had no duty to alert Parker to the possibility of forfeiture before accepting his plea. Moreover, we agree with the district court's holding that Parker was collaterally estopped from interposing a Fourth Amendment defense to the forfeiture because his Fourth Amendment claim was fully and fairly litigated in the state court criminal proceedings. Accordingly, the judgment of forfeiture entered by the district court is affirmed.

## BACKGROUND

### A. *The Investigation*

In January of 1983 a confidential informant told the New York State Police Department (the "Police") that Parker was dealing large quantities of cocaine and that the informant, who had seen Parker sell drugs, could help the Police infiltrate a drug network by introducing them to Parker's customers.

The informant introduced the Police to Walter Raymond, who told them that he purchased large quantities of cocaine from Parker on a regular basis. In April and May of 1983, an undercover officer and the confidential informant bought drugs from Raymond on several occasions. The Police made unsuccessful attempts to verify Raymond's claim that he purchased drugs from Parker. A pen register on Parker's phone revealed no telephone calls between Parker's residence and Raymond, and surveillance teams failed to substantiate Raymond's claims that he obtained drugs from Parker at Parker's home.

The Police sought and received a thirty-day eavesdropping warrant from an Oneida County judge on June 4, 1983 authorizing a tap on Parker's phone based on affidavits from the officer in charge of the investigation and the undercover officer who purchased drugs from Raymond. The affidavits recited the allegations of the confidential informant and Raymond that Parker sold large quantities of cocaine from his house. They also contained information obtained from a pen register indicating that Parker's phone had been used to place calls to phones of individuals identified by the FBI as suspected drug dealers.

The wiretap yielded tape recordings of numerous conversations implicating Parker in drug trafficking. At the same time, evidence was developed suggesting that Raymond may not have been dealing directly with Parker. The warrant was extended twice and amended to add the names of other individuals and to delete Raymond's name as an informant because the Police had been unable to verify his information. Following the last extension of the warrant, the Police intercepted a number of conversations relating to cocaine trafficking and they learned that cocaine was buried on Parker's property.

Based on the intercepted conversations, on August 22, 1983 an Oneida County judge issued a search warrant for Parker's residence. On August 27, 1983, the wiretap revealed that Parker had recently received a shipment of cocaine. Three days later, the Police searched Parker's residence and seized eleven kilograms of cocaine and $228,536 in cash.

### B. *The State Proceedings*

Parker was indicted by a New York state grand jury on September 29, 1983 on charges of Criminal Possession of a Controlled Substance in the First Degree and Conspiracy in the Second Degree. He

---

**1.** "The term 'forfeiture' is best defined as the divestiture without compensation of property used in a manner contrary to the laws of the sovereign." *United States v. Eight (8) Rhodesian Stone Statues,* 449 F.Supp. 193, 195 n. 1 (C.D. Cal.1978).

Congress has declared that "if law enforcement efforts to combat racketeering and drug trafficking are to be successful, they must include an attack on the economic aspects of these crimes. Forfeiture is the mechanism through which such an attack may be made." S.Rep. No. 225, 98th Cong., 2d Sess. 191, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3374.

moved to suppress the evidence obtained in the search, including the cocaine and the currency, on the ground that the eavesdropping warrants and search warrant were not based upon probable cause. Parker asserted that the affidavits in support of the eavesdropping warrants failed to alert the judge that the initial information from the confidential informant which prompted the investigation was stale and could not be verified; that Raymond had lied on numerous occasions; and that all attempts at verifying Raymond's claims about drug deals with Parker had failed.

A suppression hearing was held before an Oneida County judge in February of 1984 to determine whether probable cause had existed to issue the eavesdropping warrants and whether the police made materially false or reckless representations in their affidavits. The judge concluded that although the Police made false statements in the warrant applications, the statements were negligent, not reckless, and were not material to a finding of probable cause. The judge held that probable cause to issue the eavesdropping warrants had been established and that the warrants had been issued in conformity with New York Criminal Procedure Law.

In December of 1984, Parker moved to reopen the February 1984 suppression hearing on several grounds. First, he claimed that "newly discovered" aerial photos taken by the Police in January of 1983 proved that the Police had reason to doubt Raymond's veracity when they asked the judge to rely on information from Raymond to establish probable cause.[2] He also claimed to have new information indicating that the Police were untruthful in their affidavits about the availability of money for drug buys, the identity of certain individuals and the interpretation of certain phone conversations overheard pursuant to the eavesdropping warrant and used to obtain the search warrant. The judge denied Parker's motion to reopen.

On December 18, 1984, Parker pled guilty to Criminal Possession of a Controlled Substance in the First Degree. The conspiracy count was dismissed and Parker received a sentence of twenty years to life. The disposition of the money seized from Parker's property pursuant to the search warrant was not discussed.

Parker appealed the denial of his motion to suppress. The Appellate Division affirmed, holding that although the Police included statements in the warrant application that demonstrated "a reckless disregard for the truth," the false statements were not material to a finding of probable cause. *People v. Baris*, 116 A.D.2d 174, 185, 500 N.Y.S.2d 572, 581 (1986). Leave to appeal to the New York Court of Appeals was denied on May 21, 1986. *People v. Parker*, 67 N.Y.2d 1055, 495 N.E.2d 364, 504 N.Y.S.2d 1031 (1986).

### C. *The Forfeiture Proceedings*

On December 29, 1986 and January 13, 1987, the Oneida County District Attorney's Office, Troop D of the New York State Police and the Utica Police Department submitted to the U.S. Department of Justice Applications for Transfer of Federally Forfeited Property asking the federal government to seize the $228,536 found on Edward Parker's property.[3] On June 7,

---

**2.** On May 17, 1983, an undercover officer arranged to purchase an ounce of cocaine from Raymond. Raymond said that he would telephone the officer from Parker's residence to assure that he had the cocaine. In order to verify the relationship between Raymond and Parker, the Police arranged a stakeout of Parker's residence to coincide with Raymond's call. Raymond called the officer, claiming to be at Parker's residence. However, the stakeout team never observed Raymond go to Parker's residence. Two days later, the Police undertook aerial surveillance of Parker's residence and learned, they claimed for the first time, that there was more than one possible approach.

Therefore, the Police came to the conclusion that the stakeout team might have missed Raymond's visit and therefore Raymond might not be lying. Parker claimed that the "newly discovered" photos taken in January of 1983 prove that the Police must have known that there was more than one approach to Parker's residence at the time of the failed surveillance. Parker concludes that they therefore must have known that Raymond was lying about visiting Parker.

**3.** When the currency was seized from Parker's residence in August of 1983, New York state had not yet passed a statute allowing for the forfeiture of drug money. However, 21 U.S.C.

1987, a federal warrant was issued for seizure of the $228,536, which at that time was stored in a safety deposit box at the Oneida City Savings Bank. On June 24, 1987, the federal government served Parker with a civil, *in rem* complaint against the currency seeking forfeiture under 21 U.S.C. § 881.[4] On August 10, 1987, Parker filed an answer and a claim to the property in which he asserted as an affirmative defense that the currency was obtained in violation of the Fourth Amendment.

In September of 1987, Parker sought to depose Raymond. The government moved to preclude the deposition and to strike Parker's Fourth Amendment defense on collateral estoppel grounds, claiming that Parker had had a full and fair opportunity to litigate his Fourth Amendment claim in the state court criminal proceeding. Parker replied that he was denied a full and fair hearing arguing, among other things, that Raymond had been unavailable at the time of the state court probable cause hearing but had subsequently become available.[5] Judge McAvoy granted the government's motion to strike Parker's Fourth Amendment defense on collateral estoppel grounds and ruled that because Parker's Fourth Amendment claim was stricken, Raymond's testimony would be irrelevant. Before the trial of the federal forfeiture case, Parker also moved to dismiss the government's complaint on Fifth Amendment Due Process grounds, claiming that at the time of his guilty plea in state court he was never advised that forfeiture proceedings might be brought against the money. Parker claims that since the forfeiture was requested by state agencies, the U.S. Attorney's Office was an agent of

the state and therefore bound by the plea agreement. Parker's motion to dismiss was denied.

A bench trial on the forfeiture claim was held on March 27–29, 1989. The government's proof that the money was drug-related included tapes and eyewitness testimony from a roommate and business associate of Parker detailing Parker's possession, processing and sales of multi-kilo amounts of cocaine, testimony from an F.B.I. analyst describing drug records belonging to Parker which detailed hundreds of thousands of dollars of cocaine transactions, and Parker's federal tax records which reflected $19,000 gross income in the two preceding years. Parker testified that the money represented the proceeds of two inheritances plus profits from a restaurant he owned. He offered no financial records to substantiate these claims. The court granted a judgment of forfeiture from which Parker now appeals.

## DISCUSSION

On appeal, Parker maintains that his plea agreement bars the government from forfeiting the currency. He also asserts that the District Court erred in rejecting his Fourth Amendment defense and in issuing a protective order preventing him from deposing Raymond. For the reasons that follow, we reject these contentions and affirm the judgment of the district court.

### A. *Due Process*

Parker asserts that the Due Process clause of the Fifth Amendment bars the federal government from bringing a forfei-

---

§ 881(e)(1)(A) (1988) authorizes the Attorney General to "transfer the property to any Federal agency or to any State or local law enforcement agency which participated directly in the seizure or forfeiture of the property."

4. 21 U.S.C. § 881(a) (1988) provides in relevant part:
   "The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   ... (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in viola-

tion of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter...."

5. At the time of the suppression hearing, Raymond and his lawyers had advised Parker's lawyers that Raymond would invoke his Fifth Amendment right if called to testify because Raymond was under indictment at that time as a codefendant of Parker. By the time of the forfeiture proceeding, Raymond had pled guilty and served his sentence.

ture proceeding against him because 1) during the negotiations leading up to his guilty plea, the district attorney never told him that the state agencies that prosecuted him intended to seek forfeiture and the judge who accepted his guilty plea never advised him of the possibility of forfeiture, 2) there was an unreasonable delay between the entry of his guilty plea and the commencement of forfeiture proceedings nearly three years later, and 3) the currency seized from his residence was impermissibly "destroyed" when it was converted into a check.

### 1. The Plea Agreement

■ Parker argues in effect that the state's failure to advise him at the time of his plea that it would attempt to forfeit the money operates as a promise that such an action would not be brought. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). The remedy for a breached plea agreement is either to permit the plea to be withdrawn or to order specific performance of the agreement. *United States v. Brody,* 808 F.2d 944, 947 (2d Cir.1986). Parker does not seek to withdraw his guilty plea, but rather requests specific performance by an order barring the forfeiture.

■ There are two reasons why Parker is not entitled to such relief. First, under New York law, off-the-record promises made by the government in exchange for a guilty plea are not enforceable. *Siegel v. New York,* 691 F.2d 620, 626–27 (2d

Cir.1982) (neither New York law nor federal due process requires prosecutor to fulfill off-the-record promise made in plea bargaining negotiations), *cert. denied,* 459 U.S. 1209, 103 S.Ct. 1201, 75 L.Ed.2d 443 (1983); *People v. Hood,* 62 N.Y.2d 863, 865, 477 N.Y.S.2d 621, 622, 466 N.E.2d 161, 162 (1984) (defendants not entitled to specific performance of alleged plea bargain which was never formally entered on the record); *District Attorney of Kings County v. Roman,* 141 A.D.2d 601, 529 N.Y.S.2d 522 (1988) (promises in connection with guilty plea which are not placed on the record are not enforceable). Therefore, even if such a promise had been made, Parker's failure to put it on the record during his plea allocution renders it unenforceable. Second, the judge who accepted Parker's guilty plea specifically questioned both Parker's attorney and the assistant district attorney as follows: "[H]ave there been any other conditions, understandings, agreements attached to the plea other than what has been stated right here and now on the record?" Both responded that there were no other agreements. Appendix for Appellant ("A.") at 182. The judge further inquired, "I want to ask you, Mr. Parker, whether your attorney, the District Attorney, myself or anyone else has made any other promises to you other than what has been stated right here and now to cause you to plead guilty, here, today?" Parker responded, "No, your honor." A. at 186.

■ Parker does not allege that any explicit promise was made about forfeiture but rather that the judge and the district attorney had an affirmative duty to inform him that he might face the additional penalty of forfeiture.[6] However, since the for-

---

**6.** Parker cites *Himelein v. Frank,* 141 Misc.2d 416, 532 N.Y.S.2d 977 (1988), *rev'd on other grounds,* App.Div., 547 N.Y.S.2d 775 (1989), in which the New York state trial court held that where certain criminal charges against a defendant were dropped as a result of a plea agreement, the district attorney was precluded from bringing a civil forfeiture proceeding against the defendant based on the charges that were dropped.

The *Himelein* case is inapposite. The forfeiture proceeding of which Parker complains was an *in rem* proceeding brought against the cur-

rency rather than Parker himself. The forfeiture statute employed in *Himelein* is an *in personam* statute which provides for forfeiture through a civil proceeding against a guilty person rather than against property. While Article 13A of the New York Civil Practice Law and Rules permits forfeiture proceedings only against individuals guilty of criminal conduct, the federal forfeiture statute under which Parker's money was seized provides for forfeiture of property used in drug trafficking without regard to the guilt or innocence of its owner.

feiture was not a necessary consequence of Parker's guilty plea, there was no requirement that Parker be informed that it might someday occur. *Roman*, 141 A.D.2d at 601, 529 N.Y.S.2d at 522; *People v. Mitchell*, 121 A.D.2d 403, 502 N.Y.S.2d 805 (1986).

Certain possible consequences of a guilty plea are "collateral" rather than direct and need not be explained to the defendant in order to ensure that the plea is voluntary. *United States v. Russell*, 686 F.2d 35, 38 (2d Cir.1982). For example, judges are not required to inform a defendant of the possibility of deportation after a guilty plea. *Michel v. United States*, 507 F.2d 461, 465–66 (2d Cir.1974); *United States v. Santelises*, 476 F.2d 787, 790 (2d Cir.1973); *see also United States v. Yearwood*, 863 F.2d 6, 8 (4th 1988); *Fruchtman v. Kenton*, 531 F.2d 946, 948–49 (9th Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976). Similarly, whether a federal sentence runs concurrently or consecutively to a state sentence is not a direct consequence of a guilty plea and therefore need not be explained to a defendant for a plea to be constitutionally valid. *United States v. Ray*, 828 F.2d 399, 418 (7th Cir.1987), *cert. denied*, 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988); *United States v. Degand*, 614 F.2d 176, 177 (8th Cir.1980). Moreover, because a federal court has no control over any enhancement of a defendant's sentence by a state court, the court is not required to inform the defendant of such a possibility prior to accepting a plea of guilty. *Torrey v. Estelle*, 842 F.2d 234, 236 (9th Cir.1988); *United States v. Garrett*, 680 F.2d 64, 66 (9th Cir.1982). Other collateral consequences include parole eligibility or revocation, *see, e.g., Holmes v. United States*, 876 F.2d 1545, 1549 (11th

Cir.1989); *Brown v. Perini*, 718 F.2d 784, 788 (6th Cir.1983); *Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir.1977); the likelihood of an undesirable military discharge, *Redwine v. Zuckert*, 317 F.2d 336, 338 (D.C.Cir.1963); and the potential for civil commitment proceedings, *George v. Black*, 732 F.2d 108, 111 (8th Cir.1984).

The Court of Appeals for the Ninth Circuit has held that a court need not inform a defendant that his guilty plea would probably have the collateral consequence of estopping him from denying that his tax return was false and fraudulent in subsequent civil litigation. *United States v. King*, 618 F.2d 550, 552 (9th Cir.1980). The court noted that civil tax liability does not follow directly from a guilty plea to a charge of filing a false and fraudulent tax return. Rather, like deportation proceedings, the government must first bring a separate action. So, too, the government must prove the existence and amount of a tax deficiency before a defendant can be found civilly liable.

This court, in *United States v. Persico*, 774 F.2d 30, 33 (2d Cir.1985), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988), held that a defendant is not entitled to be advised at the time of his guilty plea that his culpable activity could be used against him to support a subsequent RICO prosecution.

In *Torrey v. Estelle*, the Ninth Circuit noted:

The distinction between a direct and collateral consequence of a plea " 'turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.' " *George v. Black*, 732 F.2d 108, 110 (8th Cir.1984) (quoting *Cuthrell*

---

Further, unlike the forfeiture in the *Himelein* case which required the government to prove the same conduct involved in the charges that were dropped against the defendant in exchange for his guilty plea, the forfeiture of Parker's money was based on conduct clearly encompassed in the charge to which he pled guilty.

Parker also cites *United States v. Khan*, 857 F.2d 85 (2d Cir.1988), *reh'g granted*, 869 F.2d 661 (2d Cir.1989), in which this court held that Rule 11 of the Federal Rules of Criminal Procedure required that a defendant's conviction be

vacated because the district court failed to inform him prior to accepting his plea that the maximum sentence could include restitution. However, *Khan* does not establish that Rule 11 requires anything more than that the judge inform the defendant of the maximum possible penalty for the particular criminal offense for which the judge is sentencing the defendant. Further, the precise terms of Rule 11 are not applicable to state courts. *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir.), *cert. denied*, 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975).

v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir.), cert. denied, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973)). 842 F.2d at 236.

■ Applying this standard, civil forfeiture is not a direct consequence of a guilty plea because it does not represent "a definite, immediate and largely automatic effect on the range of the defendant's punishment." Id. Parker's criminal conviction was neither a necessary nor a sufficient condition precedent to forfeiture of the currency.[7] Parker's guilty plea did not cause the currency to be forfeited. Under the relation-back doctrine, the forfeiture occurs when the crime is committed and therefore, Parker had no property interest in the money as of that moment.[8] Indeed, even if Parker had never been charged with a crime or had been acquitted of all criminal wrongdoing, the government would have remained free to pursue forfeiture. "That acquittal on a criminal charge is not a bar to a civil action by the Government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based has long been settled." Helvering v. Mitchell, 303 U.S. 391, 397, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938); see also One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972); United States v. One Assortment of 89 Firearms, 465 U.S. 354, 361, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984).

■ The reason that an acquittal does not bar a forfeiture action is twofold. First, forfeiture is a civil, remedial measure brought against the offending property rather than a criminal penalty against the person acquitted. United States v. $2500 in United States Currency, 689 F.2d 10,

12–16 (2d Cir.1982); United States v. D.K.G. Appaloosas, Inc., 829 F.2d 532 (5th Cir.1987), cert. denied, 485 U.S. 976, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988). In an in rem forfeiture proceeding,

[i]t is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. In a criminal prosecution it is the wrongdoer in person who is proceeded against, convicted and punished. The [in rem] forfeiture is no part of the punishment for the criminal offense.

Various Items of Personal Property v. United States, 282 U.S. 577, 581, 51 S.Ct. 282, 284, 75 L.Ed. 558 (1931).

■ Second, even if the government is unable to prove a criminal charge against a defendant "beyond a reasonable doubt," there may be sufficient evidence to support a civil forfeiture. In a civil forfeiture proceeding under 21 U.S.C. § 881(a)(6), the government has the burden of proving only that there is probable cause for belief that a substantial connection exists between the money to be forfeited and the exchange of a controlled substance. United States v. Banco Cafetero Panama, 797 F.2d 1154, 1160 (2d Cir.1986); United States v. $2500, 689 F.2d at 16 (2d Cir.1982); see United States v. The Premises and Real Property at 4492 Livonia Road, 889 F.2d 1258, 1269 (2d Cir.1989); Application of Kingsley, 614 F.Supp. 219, 224 (D.Mass.1985). Once probable cause is established, the burden shifts to the claimant to demonstrate that the money was not used in violation of the statute. Banco Cafetero, 797 F.2d at 1160; United States v. Fifty Thousand Dollars ($50,000) U.S. Currency, 757 F.2d 103, 105 (6th Cir.1985).

Here, the government did not rely on Parker's guilty plea to establish probable cause, but presented evidence sufficient to establish probable cause independently at the forfeiture trial.

7. The Second Circuit has recently suggested that factual admissions made during a plea proceeding may be used to establish probable cause to bring a forfeiture proceeding. United States v. The Premises and Real Property at 4492 Livonia Road, 889 F.2d 1258, 1268 (2d Cir.1989). However, forfeiture is not an automatic consequence of a plea of guilty but rather can occur only after a separate proceeding in which the defendant is given the opportunity to present evidence that the property should not be forfeited.

8. "All right, title, and interest in [property subject to forfeiture] shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 881(h) (Supp. V 1987).

Therefore, even if Parker had chosen not to plead guilty and had been acquitted after trial, the money could still have been the subject of a forfeiture action.

### 2. Delay

The forfeiture action in this case was brought almost four years after Parker's arrest, almost three years after his guilty plea, and one year after the New York Court of Appeals denied leave to appeal. Parker argues that this delay was unreasonable and that "the reason was to obtain an uninformed plea that substantially prejudiced Parker's rights that he asserted." Appellant's Brief at 34. He claims that he asserted his rights at the first opportunity, but has yet to receive a full and fair hearing. The government states that for much of the period between the criminal proceedings against Parker and the forfeiture, the Oneida County prosecutors were pursuing criminal charges involving Parker and a number of codefendants and that contemporaneous civil proceedings might have forced the government to reveal sensitive information about the criminal prosecutions.

Whether a delay in bringing forfeiture proceedings was reasonable depends on the following factors: 1) length of delay, 2) reason for delay, 3) timing of claimant's assertion of his rights, and 4) prejudice to the claimant. *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850),* 461 U.S. 555, 564, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143 (1983) (citing *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

We find that although the delay was lengthy, it was reasonable because the government has offered a valid explanation for it and the delay did not prejudice Parker's forfeiture defense. *See United States v. U.S. Treasury Bills Totaling $160,916.25 and U.S. Currency Totaling*

*$ 2,378.75,* 750 F.2d 900, 902 (11th Cir.1985) (fourteen month delay between discovery of money and initiation of forfeiture proceedings not unreasonable because of government's "diligent pursuit" of a pending criminal proceeding); *United States v. $18,505.10,* 739 F.2d 354, 356 (8th Cir.1984) (delay of twenty-six months justified because property was being held as evidence for a state criminal proceeding and no prejudice resulted from delay). Moreover, there is no indication that Parker asserted a claim to the money held by the government prior to the initiation of the forfeiture proceedings.

### 3. Destruction

Parker asserts that he has been prejudiced because the currency was "destroyed" when it was replaced with a cashier's check, thereby depriving him of the opportunity to inspect the actual currency, notes, papers and receipts to prove that the money came from legitimate sources, such as gifts and profits from a restaurant he owned.

In *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988) the Supreme Court held that unless a defendant can show bad faith on the part of the police, the destruction of potentially useful evidence is not a denial of due process. Parker has not offered evidence of bad faith. Moreover, an appropriate substitution of monies is permissible in a forfeiture action. *United States v. $57,480.05,* 722 F.2d 1457, 1459 (9th Cir.1984).[9]

### B. *Full and Fair Hearing*

As indicated above, Parker contends that Judge McAvoy erred in holding that he was collaterally estopped from challenging the forfeiture on Fourth Amendment grounds.

Although not raised by the parties, it is clear that the preclusive effect of

---

**9.** Parker cites *United States v. Ramey,* 490 F.Supp. 96 (E.D.Tenn.1980), for the proposition that property subject to forfeiture may not be destroyed prior to the issuance of a court order. The court in *Ramey* was concerned about the destruction of chemicals which had been seized but not yet found forfeitable. Had the chemicals been destroyed, the claimant would have had nothing to recover had he prevailed. Here, had he prevailed, Parker would have received the money in check form.

a state court judgment is governed by state law. 28 U.S.C. § 1738 (1982); *Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 380–81, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985); *Cullen v. Margiotta*, 811 F.2d 698, 732 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). Under New York law, collateral estoppel applies when the issue as to which preclusion is sought is identical with the issue decided in the prior proceeding, the issue was necessarily decided in the prior proceeding, and the party against whom preclusion is presently sought had a full and fair opportunity to litigate the issue in the prior proceeding. *Capital Telephone Co. v. Pattersonville Telephone Co.*, 56 N.Y.2d 11, 17, 436 N.E.2d 461, 463, 451 N.Y.S.2d 11, 13 (1982).

Parker claims that he was denied a full and fair opportunity to litigate his Fourth Amendment claim in state court because 1) the state court fact-finding hearing was inadequate, 2) the state court incorrectly applied the controlling legal standard, and 3) Raymond was not available to testify at the state court proceedings.

### 1. Fact-finding

Parker, citing *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963), claims that he was entitled to an evidentiary hearing in the federal district court on his Fourth Amendment claim because the state judge's factual determination as to that claim was not fairly supported by the record, there was a substantial allegation of newly discovered evidence, and the state court did not afford him a full and fair fact-finding hearing.

■ Under *Townsend*, the federal district court would have been required to grant Parker an evidentiary hearing on his Fourth Amendment claim if, as Parker claims, the record failed to support the state court's factual determination that false statements made by the Police were immaterial to the finding of probable cause. However, the record indicates substantial evidence, apart from the false statements, to support the state court's finding of probable cause for both the

eavesdropping and search warrants. *See* 116 A.D.2d at 178–86, 500 N.Y.S.2d at 576–81. The first eavesdropping warrant was issued on the basis of information from informants who, at the time, the Police had reason to believe were reliable. Although subsequent developments in the investigation cast doubt on the veracity of those informants, the extension of the eavesdropping warrant and the issuance of the search warrant were supported by numerous drug-related conversations intercepted through the wiretap and interpreted by a police officer with extensive experience in drug trafficking investigations.

■ Parker also claims that he should have been granted a federal hearing because of the failure of the state court to reopen the suppression hearing in light of "newly discovered evidence." However, Parker's allegations of "newly discovered evidence" are far from substantial. First, he offers no explanation for his failure to discover the evidence prior to the suppression hearing. Second, the evidence itself, even if admitted, does not undermine the state court's finding of probable cause. With regard to the Police photographs which Parker sought to introduce, even if the Police knew or should have known prior to the failed surveillance that there were multiple approaches to Parker's residence, that knowledge would not necessarily have led them to the conclusion that Raymond was lying about everything he told them. With regard to his claim that the Police included untrue statements in their affidavits about the availability of money for drug buys, the identity of certain individuals, and the interpretation of certain phone conversations, Parker offers no basis for his conclusory allegations that the Police were untruthful about these other matters. In sum, no federal hearing was warranted on the basis of the state court's failure to reopen the suppression hearing because of newly discovered evidence.

■ Parker complains that no state hearing was held as to the facts alleged in support of the application for the search warrant. However, he had the opportunity to contest those facts at the state court

suppression hearing. He also charges that the state court should not have concluded that the phone conversations overheard pursuant to the eavesdropping warrant were sufficient to support a finding of probable cause to search, because the police officers who interpreted those conversations for the court had previously demonstrated a disregard for the truth. However, portions of transcripts of conversations in which Parker's involvement in drug sales was openly discussed were attached to the applications for the extension of the eavesdropping warrant and issuance of the search warrant, rendering interpretation by the Police unnecessary. 116 A.D.2d at 185, 500 N.Y.S.2d at 581. Moreover, the record supports the Appellate Division's finding that the interpretations of the taped conversations offered by the Police implicating Parker in drug trafficking were reasonable.

Accordingly, Parker was not entitled to a federal evidentiary hearing under *Townsend* because the state fact determination was fairly supported by the record, Parker's allegations of newly discovered evidence were not substantial, and there is no indication that the state court did not afford Parker a full and fair fact-finding hearing.

### 2. Legal Standard

██ Parker further contends that he was denied a full and fair hearing of his Fourth Amendment claim in state court because the Appellate Division's decision in his case improperly applied the test enunciated by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). In *Franks*, the court held that if a defendant makes a substantial preliminary showing that 1) the warrant affidavit includes a false statement, 2) the statement was made knowingly and intentionally or with reckless disregard for the truth, and 3) the allegedly false statement is necessary to a

finding of probable cause, then the defendant is entitled to a suppression hearing. However, if, when the false material is omitted, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. *Id.* at 171–72, 98 S.Ct. at 2684–85.

In *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir.), *cert. denied*, 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985), this court, applying *Franks* to a wiretap application, held that although the warrant affidavit contained some possibly false allegations, no material facts were omitted and, if the tainted allegations were disregarded, there remained a "residue of independent and lawful information sufficient to support probable cause."

The Appellate Division in Parker's case held that the Police showed a "reckless disregard for the truth" when they failed to tell the judge of the results of their surveillance of Parker's residence.[10] The court, citing *Franks*, stated:

The validity of the warrant, however, is determined by whether the false statement is necessary to the finding of probable cause. Thus, the falsehood should be deleted and the truth inserted to determine whether the warrant was based on probable cause.

If the truth is inserted here, probable cause would still be evidenced. The truth was that the surveillance could not confirm whether Raymond was at Parker's house on May 17. The police were unsure because Raymond could have used an alternate route. The truth casts doubt upon Raymond's information but it does not eliminate probable cause because it does not establish that Raymond was lying.

116 A.D.2d at 185, 500 N.Y.S.2d at 581 (citations omitted).

Parker argues that if the Appellate Division had simply deleted from the warrant application Raymond's unreliable claim that

---

**10.** The officer in charge of the investigation testified that surveillance of Parker's house had to be stopped because of the remoteness of the area and a sudden increase in local traffic. However, it was revealed at the suppression hearing that the surveillance had been in place at the time that Raymond claimed to have left Parker's house. 116 A.D.2d at 185, 500 N.Y.S.2d at 580–81.

he had been dealing with Parker, probable cause would unquestionably be lacking. However, as this court has recognized, the reasoning in *Franks* extends to material omissions as well. *See United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir.1987) ("[M]aterially misleading omissions as well as misrepresentations may be challenged by the defense."). Moreover, by inserting the information that was known to the police but wrongly omitted from the warrant application because it might have cast doubt upon the existence of probable cause, the Appellate Division went further than Parker contends was necessary: had they merely omitted the false information without inserting the truth about the surveillance, the evidence supporting the finding of probable cause would have been even stronger. Accordingly, we hold that the court carefully applied the "correct and controlling constitutional standard" in rejecting Parker's Fourth Amendment claim and appellant is collaterally estopped from raising the issue in the federal court. *LaRocca v. Gold*, 662 F.2d 144, 148 (2d Cir. 1981).

### 3. Unavailability

It remains to be decided whether Parker should have been permitted to depose Raymond. Judge McAvoy granted the government's motion for a protective order precluding Parker from taking Raymond's deposition on the grounds that Raymond's testimony would not be relevant because Parker's Fourth Amendment claim had been denied on collateral estoppel grounds. However, Parker alleges that the state court suppression hearing was not complete because Raymond was "unavailable" to testify. Through Raymond's proposed deposition, Parker sought to establish that the police lied to the judge who issued the eavesdropping warrant and that these lies involved material facts going to the issue of probable cause. If Raymond

was legally unavailable to testify at the state court proceedings and his testimony would have undermined the state court's finding of probable cause, collateral estoppel would not apply.

In *Blonder–Tongue Laboratories, Inc. v. University of Ill. Found.*, 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971) the Supreme Court declared that the application of collateral estoppel could result in unfairness if "without fault of his own" a party against whom collateral estoppel is sought was deprived of "crucial" evidence or witnesses in the prior action whose outcome is said to bar a subsequent action. It is necessary therefore to decide whether Parker was responsible for Raymond's failure to testify in the state court proceedings and whether Raymond's testimony was "crucial" to Parker's Fourth Amendment defense.

At the time of the state hearing, Parker's attorneys sought Raymond's testimony and were advised by Raymond and his attorney that Raymond, who was then under indictment, would invoke his Fifth Amendment right if called to testify. As it turned out, Parker never actually called Raymond to testify or indicated on the record that he believed Raymond's testimony was necessary. Parker's failure to call Raymond to testify precludes the relief he now seeks.[11] Raymond's affidavit stating that he had lied to the Police about his connection to Parker (A. at 65) was offered by Parker at the suppression hearing and admitted into evidence but there is no indication in the record of the state court proceedings that Parker ever intended to call Raymond as a witness. Moreover, the issue of Raymond's unavailability was not raised by Parker in his appeal of the suppression ruling to the Appellate Division. Finally, because the trial court and the Appellate Division did not consider the evidence supplied by Raymond to be material to the existence of probable cause, Ray-

---

**11.** Parker cites *People v. Comfort*, 151 A.D.2d 1019, 542 N.Y.S.2d 84 *appeal denied*, 74 N.Y.2d 807, 545 N.E.2d 879, 546 N.Y.S.2d 565 (1989) in support of his claim that "it was not necessary to go through the mechanical formalism of actually calling [Raymond] to the stand" in order to

establish that he was unavailable. Of course, the state appellate court's decision in *Comfort* is not binding on this court. Further, in *Comfort*, the party who failed actually to call the witness was not the same party who later sought to establish that the witness was unavailable.

mond's testimony as to the truthfulness of that information was not "crucial" or even relevant.

Accordingly, the district court properly precluded Parker from deposing Raymond and correctly concluded that because he had a full and fair opportunity to litigate his Fourth Amendment claim in state court, Parker was not entitled to federal review of that claim.

The judgment of the district court granting forfeiture is affirmed.