**UNITED STATES of America**

**v.**

**ONE HOUSEHOLD FINANCE CHECK, et al.**

**Civ. Nos. H–90–804 (PCD), H–90–988 (PCD).**
**Misc. Civ. N–90–110 (PCD).**
**No. 2:91CV00061 (PCD).**

United States District Court, D. Connecticut.

July 26, 1991.

Leslie C. Ohta, Asst. U.S. Atty., New Haven, Conn., for plaintiff.

David W. Goldman, Hamden, Conn., for Household Realty Corp.

Stanley M. Krupa, Middletown, Conn., for Farmers and Mechanics Bank.

Jeremiah Donovan, Old Saybrook, Conn., for Anna M. Lee.

William M. Bloss, David A. Leff, Jacobs Grudberg Belt & Dow, New Haven, Conn., for defendant.

## RULING ON PENDING MOTIONS

DORSEY, District Judge.

### I. *Motion to Strike*

Claimant's Motion to Strike is denied. While incorporation of the search and seizure warrant with its accompanying documentation is not the most precise nor orderly compliance with the requirement of Fed. R.Civ.P. Rule 8(e)(1), no real detriment to claimant is found nor is the pleading thereby rendered substantively deficient.

### II. *Objection to Order of Magistrate Judge*

On application of the government, in what was originally Docket No. N–90–110, now consolidated as H–90–804, the Magistrate–Judge ordered Household Finance Corporation ("HFC") to cash its check, issued at the direction of its affiliate, Household Realty Corporation ("HRC"), and payable to claimant Anna Lee. HFC and HRC seek review and reversal of that order claiming: (1) HRC had the right to terminate the underlying loan agreement for fraud; (2) the forfeiture statute does not vitiate the UCC and, thus, the forfeiture is subject to rights and defenses arising un-

der that statute; (3) The Magistrate Judge's order denied HFC and HRC due process.

Facts

There is evidence from which it could be found that Mrs. Lee arranged to purchase 50 pounds of marijuana from a police officer working undercover and posing as a dealer in marijuana. To pay the purchase price, Mrs. Lee applied to Household Realty Corporation ("HRC") for a draw in the amount of $40,000 against a previously arranged, and approved, credit line of $92,000 which was secured by a second mortgage on the Lee home. Although a statement of purpose for the draw was not specifically required by the agreement, Mrs. Lee falsely stated that the $40,000 was to be used to purchase a refrigerated van. Satisfied from the original application for the line of credit and the request for the draw, HRC directed HFC to issue the check to Mrs. Lee. HFC did so in the form of the check in question which was drawn on another Household affiliate, Household Bank ("HB"), f.s.b., a federal savings bank. Mrs. Lee was given the check on April 17, 1990 but she was immediately arrested and the check was seized. It has not been cashed. The Magistrate Judge has ordered HFC to deliver the amount of the check to the government.

Discussion

A. *Due Process*

■ The government's right to seize attached to the check when Mrs. Lee obtained possession of it, assuming she intended to use the proceeds to consummate the marijuana purchase. 21 U.S.C. § 881(h). The absence of a summons and complaint is immaterial.

■ It is also immaterial that the Magistrate Judge's Order was entered ex parte. HFC has had the opportunity to be heard on reconsideration by the Magistrate Judge. It has not yet parted with the proceeds. Having had ample opportunity to explore the facts and brief the issue, it is once again being heard as to its rights and claims, still before its position has actually been altered. Even if the proceeds are turned over, HFC will have another opportunity to be heard, as a claimant to the proceeds. See 19 U.S.C. §§ 1602–1610; 21 C.F.R. §§ 1316.71–1316.81.

B. *Creditor's Claim of Right to Void Contract*

Whether HRC and HFC may void the line of credit agreement requires an analysis of the embodying document from which they claim knowledge of Mrs. Lee's purpose for the draw and a right to a default when her statement of the purpose was false. If such a right existed under the terms of the agreement, the exercise of that right beyond Mrs. Lee, i.e., as against the government, depends on whether a state law concerning the rights of a drawer of a check is preempted by federal forfeiture law.

C. *Preemption by Federal Law*

■ HFC claims that seizure of the check seized nothing since it is not a bank, the check was neither certified nor a cashier's check, and a stop order vitiated it. A check constitutes the drawer's order to the drawee to pay the specified sum to the payee. The check is converted into cash, and thus honored or paid, when it is accepted by the drawee and cash is exchanged for the check. Conn.Gen.Stat. § 42a–3–409(1). HB is not the target of the government's application, it is not a party here. As the drawer, HFC is properly a target along with HRC which ordered the check drawn. See Conn.Gen.Stat. § 42a–3–413(2).

■ The government claims to have acted under the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.*, which it claims cannot be overridden by a state statute. The government asserts the right to convert the check into cash[1] because, by seizing the check, it thereby became vested in the

---

1. Upon the cashing of the check, presumably HB would debit HFC which in turn would debit HRC. One of the three could then assert a claim against the money. Further by reason of its mortgage HRC would increase the amount of its claim under the mortgage against the Lee property.

property right to and in the check. All legal and equitable rights in the check then vested in the government subject to the claims as may be asserted. *See United States v. $41,305.00 in Currency*, 802 F.2d 1339, 1346 (11th Cir.1986) ("Illegal use [of the property] immediately vests title to the property in the sovereign, and cuts off the rights of third parties to obtain legally protectible interests in the property."). As of the moment the crime is committed, the criminal's interest in property used in perpetrating the crime is extinguished. *United States v. U.S. Currency in the Amount of $228,536.00*, 895 F.2d 908, 916 (2nd Cir.1990), *cert. denied*, —— U.S. ——, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990). Seizure of funds in a bank account has been held to have cut off any right of payees of checks issued, but not paid before the seizure of the account, because the payees had no interest in the funds in the account merely based on their possession of the checks. *United States v. Four Million, Two Hundred Fifty-Five Thousand Dollars*, 762 F.2d 895, 907 (11th Cir.1985); *United States v. Sonal, Inc.*, 573 F.Supp. 1126 (S.D.N.Y.1983). This case presents the question of whether the seizure of the check absolutely vests the government with all rights embodied in the check or are the government's rights subject to the terms and conditions to which the check is ordinarily subject as a matter of law.

■■■ Connecticut statutory law provides that "[a] check ... does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." Conn. Gen.Stat. § 42a–3–409(1). Thus, while the payee may call upon the drawee to pay over funds of drawer in the possession of drawee, the payee obtains no interest in such funds until he presents the check and the drawee accepts it. The government cites no authority for a proposition that the Mrs. Lee had any other, or greater right. Apart from the drawee, however, the check represents the drawer's commitment to

payment of the face amount of the check. The government here is seeking to obtain the amount of the check, from drawer and its alter ego. It is not seeking drawer's funds held by drawee.

While the forfeiture statute does not specifically define the extent of its reach, particularly when it conflicts with state law, it provides that property subject to forfeiture, in which "no property right shall exist", includes "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, ... and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter" 21 U.S.C. § 881(a)(6). *See United States v. Farrell 606 F.2d 1341* (D.C.Cir.1979) (money used or intended to be used to purchase drugs is reached by the statute). Clearly a check is a negotiable instrument, *see* Black's Law Dictionary, Fourth Edition, 1187–88, and therefore forfeitable. *Boas v. Smith* 786 F.2d 605, 609 (4th Cir.1986). Congress could not have intended, by the foregoing language, that the reach of the statute go no further than the document itself for such a result would be purposeless. If the statute went no further, its language would have vested the government, upon a proper seizure, with no right to reach the funds represented by the check, except with the agreement of the drawer, drawee and payee.[2]

■■■ Drawer's money, represented by the HFC check issued to Mrs. Lee, was money "intended to be used [by Mrs. Lee] to facilitate a violation of ... subchapter [I, Chapter 13 of Title 21]", which is the subchapter referred to in 21 U.S.C. § 881(a)(6). Congress intended the forfeiture statute to reach proceeds even if they went "through a series of 'intervening' transactions and 'changed in form.'" *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1161 (2d Cir.1986). As in the case of drug proceeds, that are reachable even when the funds have been transferred through more than one bank account, the forfeiture of

---

**2.** A serious question, not presented here and thus not dealt with herein, is the effect of a seizure of an account with no funds or a check which is legally deficient.

negotiable instruments is not to be constrained by state law and thereby thwart the policy Congress sought to effectuate. Forfeiture constitutes the exercise of jurisdiction over the res. *United States v. $57,-480.05 United States Currency and Other Coins*, 722 F.2d 1457, 1459 (9th Cir.1984). As the statute authorizes forfeiture of moneys and negotiable instruments, the seizure of a check, a negotiable instrument, would be a meaningless gesture if it did not reach the fungible dollars underlying the instrument.[3] Congress could not have intended to authorize forfeiture of a check only to have the process vitiated by a stop payment order on that check.

Here if the forfeiture is effectuated against the money represented by the check, HFC can simply charge Mrs. Lee's account and seek to add the charge to the amount secured by its second mortgage. To hold otherwise would attribute to Congress, the intention that the seizure of any negotiable instrument, or security for that matter, would reach only the piece of paper, the document which constituted the negotiable instrument. Unless 21 U.S.C. § 881(a)(6) is given immediate full, literal effect, the seizure, and the follow up forfeiture proceeding, would have reached nothing until the actual moneys are reached. In the meantime the seizure, and forfeiture, would have failed to achieve its purpose and could be vitiated. Had Congress intended such a result, it would have authorized the forfeiture of money only, thus requiring that the money be reached before any effectual displacement of others' rights therein would occur. Such a result would permit a drug purchaser to give a check to pay for drugs and then thwart a seizure by stopping payment on the check.

▪ Generally the government merely succeeds to the interest subject to forfeiture. *In re Metmor Financial, Inc.*, 819 F.2d 446 (4th Cir.1987). *Contra, United States v. One Piece of Real Estate*, 571 F.Supp. 723 (W.D.Tex.1983). To at least the extent of the application of 21 U.S.C. § 881(a)(6) to the facts here presented, the UCC is held to have been preempted. *See United States v. Marx*, 844 F.2d 1303 (7th Cir.1988) (to effectuate Congress' intention to the contrary the holding here must be limited to the facts here presented). Otherwise local law would frustrate Congress' purposes in adopting the forfeiture statute. *See United States v. South 23.19 Acres of Land*, 694 F.Supp. 1252, 1254 (E.D.La.1988) (Community property of husband and wife which, under Louisiana law, vested each with an undivided one-half interest in the entirety, was divisible, nonetheless, to permit forfeiture of husband's entire interest, thereby permitting sale of entire tract and division of the proceeds between the government and the innocent wife, citing *United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983).). While it was not Congress' intent to penalize innocent third parties, incidental effects on third parties has repeatedly been tolerated, unless the forfeiture statute expressly provides relief to those parties.

▪ Unmentioned by HFC/HRC and not discussed by the government is the innocent owner exclusion in § 881(a)(6):

> except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

HRC/HFC assert the absence of any knowledge or consent to Mrs. Lee's apparent intended use of the $40,000 for the marijuana purchase. No evidence or suggestion to the contrary has been offered by the government. Finding the interest of HFC/HRC in the money represented by the check, given its intangible nature, to constitute an ownership interest then the exception quoted above would apply. The legislative history requires that the exception be applied because it was Congress' intent that the term "owner" be "broadly inter-

---

3. There does not appear to be authority on the issue. The parties, having discussed the issue to no helpful degree, cite none, perhaps because few drug transactions are conducted by check.

preted to include any person with a recognizable legal or equitable interest in the property seized." U.S. Congressional and Administrative News, 95th Congress, Second Session, 1978, 9496 at 9522. Construing the phrase broadly, consistent with the legislative intent, HFC/HRC would certainly have a "recognizable legal or equitable interest" in the moneys which were committed but not actually delivered to Mrs. Lee. Congress intended to exempt property of persons ignorant of, and not having consented to, its illicit use. Thus, the Order of the Magistrate–Judge, applied to the moneys of HFC/HRC is vacated.

Conclusion

The due process rights of HFC and HRC have not been violated. The forfeiture statute prevails over state law. As owners of an interest in the moneys represented by the check in question, HRC and HFC are protected by the innocent owner clause of 21 U.S.C. § 881(a)(6). Therefore, the order of the Magistrate–Judge is vacated.

SO ORDERED.