811 F.Supp. 89 (1993)
In re AIR DISASTER AT LOCKERBIE, SCOTLAND ON DECEMBER 21, 1988.
Janet E. MacQUARRIE, et al., Plaintiffs,
v.
ALERT MANAGEMENT SYSTEMS, INC., and Pan Am World Services, Inc., Defendants.
MDL No. 799 (TCP), No. 90-CV-1209 (TCP).
United States District Court, E.D. New York.
January 14, 1993.
*90 Read K. McCaffrey, Patton, Boggs & Blow, Baltimore, MD, for plaintiffs.
James M. Shaughnessy, Windels, Marx, Davies & Ives, New York City, for defendant Alert Management Systems, Inc.

MEMORANDUM AND ORDER
PLATT, Chief Judge.
Plaintiffs, by counsel, have moved this Court for an Order granting partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the issue of liability against defendant Alert Management Systems, Inc. ("Alert") based on the doctrine of collateral estoppel. For the reasons set forth below, the motion is denied.

BACKGROUND
On December 21, 1988, Pan Am Flight 103 crashed near Lockerbie, Scotland; all 243 passengers and 16 crew members died.[1] The surviving relatives and personal representatives of the passengers who died sued Pan American World Airways, Inc. ("Pan Am"), Pan Am World Services, Inc. ("PAWS"), Alert, and Pan Am Corporation ("Pan Am Corp.").[2] On April 4, 1989, the Judicial Panel on Multidistrict Litigation consolidated all actions and transferred them to this Court. See In re Air Disaster at Lockerbie, Scotland on December 21, 1988, 709 F.Supp. 231 (Jud.Pan. Mult.Lit.1989).
Over a period of 11 weeks in the spring and summer of 1992, a jury trial was conducted in the passenger actions to determine if defendants had engaged in wilful misconduct that was the proximate cause of the disaster.[3] On July 10, 1992, the jury returned a verdict in favor of passenger plaintiffs finding "Pan Am (including Alert)" had engaged in wilful misconduct and that such wilful misconduct was "a substantial factor in causing the disaster." Jury Verdict Form. Subsequently, damage trials were held for three passenger plaintiffs and this Court entered judgments *91 against Pan Am and Alert in these three cases.
The surviving relatives and personal representatives of the crew members on Flight 103 (hereinafter "crew plaintiffs"), who named both Alert and PAWS as defendants in their complaint, did not join the passenger plaintiffs in the first lawsuit and as such, the claims of these parties are pending before this Court.[4] Crew plaintiffs now seek partial summary judgment against Alert based on the existing verdict and judgments in the passenger cases. Crew plaintiffs claim that "[b]y virtue of the jury verdict in the [p]assenger [c]ases that Alert ... engaged in wilful misconduct which was a substantial cause of the Lockerbie disaster, the [c]rew [m]embers are entitled to partial summary judgment on Counts I and II of their Complaint (sounding in negligence) and Counts III and IV (sounding in intentional tort) based on the doctrine of collateral estoppel." Memorandum of Law in Support of Crew Claimants' Motion for Partial Summary Judgment Against Defendant Alert Management Systems, Inc. at 1.[5]

DISCUSSION
In a Memorandum and Order dated November 2, 1992 (hereinafter "November, 1992 Mem. & Ord."), this Court addressed a similar motion in which Alert moved for judgment as a matter of law in the passenger cases, arguing that passenger plaintiffs had not offered sufficient evidence to allow a reasonable jury to conclude that Alert engaged in wilful misconduct that proximately caused the accident. The Court denied this motion finding that passenger "plaintiffs presented substantial evidence at trial such that a reasonable jury would almost certainly have concluded that Alert, by itself, was also guilty of wilful misconduct that proximately caused the disaster." November, 1992 Mem. & Ord. at 4. Notwithstanding this finding, the Court is not convinced that crew plaintiffs here have met their burden for granting summary judgment.
A motion for summary judgment may only be granted where the moving party demonstrates that no genuine issue of material fact exists for trial and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The duty of the Court when confronted with such a motion is limited to determining whether the case presents issues of fact which require a trial for resolution; it may not properly resolve those issues itself in the context of the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-250, 106 S.Ct. 2505, 2509-11, 91 L.Ed.2d 202 (1986). In the course of its analysis, the Court must draw all reasonable inferences and resolve all ambiguities in favor of the nonmoving party. See Binder v. Long Island Lighting Co., 933 F.2d 187, 191 (2d Cir.1991).
Crew plaintiffs claim no genuine issue of material fact exists because the issue of Alert's liability was litigated in the passenger cases and therefore Alert should be collaterally estopped from relitigating this issue. However, crew plaintiffs have not sustained their burden to entitle them to invoke the doctrine of collateral estoppel.
To invoke the doctrine of collateral estoppel, crew plaintiffs must demonstrate that the issues they seek to preclude were identical to issues necessary to the passenger cases, that the issues were actually litigated and decided in the passenger cases, and that Alert, as the party against which crew plaintiffs seek preclusion, had a full and fair opportunity to litigate such issues. See Montana v. United States, 440 U.S. *92 147, 153-55, 99 S.Ct. 970, 973-75, 59 L.Ed.2d 210 (1979); U.S. v. U.S. Currency, The Amount of $228,536.00, 895 F.2d 908, 918 (2d Cir.1990); GAF Corp. v. Eastman Kodak Co., 519 F.Supp. 1203, 1211 (S.D.N.Y.1981). The burden is on crew plaintiffs as the moving party to establish each of these requirements. See Wilder v. Thomas, 854 F.2d 605, 617 (2d Cir.1988); Carino v. Town of Deerfield, 750 F.Supp. 1156, 1163 (N.D.N.Y.1990), aff'd, 940 F.2d 649 (2d Cir.1991).
This Court is not satisfied that crew plaintiffs have met their burden of establishing that the issue of Alert's liability, as separate from that of Pan Am, was actually litigated, much less necessarily decided, in the passenger cases.
In the passenger cases, the evidence adduced by passenger plaintiffs focused on duties imposed on "Pan Am (including Alert)" with respect to the safety of the passengers and "Pan Am's (including Alert's)" alleged breach of those duties. The evidence was designed to prove that the bomb which ultimately destroyed the plane was in a suitcase that was loaded onto Flight 103 as interline luggage from an Air Malta flight, that Pan Am decided to use x-ray procedures to inspect interline luggage in place of performing positive passenger-to-baggage matching as required by FAA regulations, and that Pan Am's decision to abandon the positive passenger-to-baggage matching procedure caused the crash of Flight 103. It is unclear whether the jury determined that Alert played any part in Pan Am's alleged decision to abandon the positive passenger-to-baggage matching procedures.
Crew plaintiffs note that notwithstanding the evidence produced during trial regarding Pan Am's unauthorized substitution of the x-ray system for the positive passenger-to-baggage matching system, the jury in the passenger cases heard evidence regarding Alert's failure to disseminate warnings about the bomb threat, to perform properly its security functions, and to search for baggage which may contain electronic devices. Crew plaintiffs argue that this evidence proves Alert's wilful misconduct. While it is true that the jury in the passenger cases heard substantial evidence regarding Alert's failure to employ competently trained and well-informed x-ray screeners and that the jury almost certainly would have determined that this failure on the part of Alert also led to the disaster,[6] it still remains unclear whether the jury determined that Alert's actions or omissions in and of themselves were a proximate cause of the disaster. The jury determined only that "Pan Am (including Alert)" had engaged in wilful misconduct and that such wilful misconduct was "a substantial factor in causing the disaster." Jury Verdict Form. The jury never made specific determinations as to whether Alert by itself owed any duty to Pan Am crew members, whether Alert breached any duty, or whether any such breach was the proximate cause of the crash of Flight 103.
To be sure, this Court stated in the November, 1992 Mem. & Ord. that there was overwhelming evidence with respect to failures on the part of Alert and its employees from which the jury "would almost certainly have" inferred wilful misconduct. However, the jury in the passenger cases returned a verdict against "Pan Am (including Alert)" and here crew plaintiffs seek partial summary judgment against only Alert. While Alert's acts or omissions in and of themselves might well be negligence (or even intentional tort) as a matter of law, they were not necessarily the proximate cause, and the Court may not make that determination as a matter of law because the jury made its determination in combination, not separately. It was not essential to the judgment in the passenger cases that Alert's failures were the proximate cause of the disaster, and "to operate as an estoppel ... the determination of the issue must have been essential to the judgment." Tucker v. Arthur Anderson & Co., 646 F.2d 721, 728 (2d Cir.1981).
*93 Therefore, although this Court decided that Alert was not entitled to judgment as a matter of law at the close of the passenger cases, this does not require the Court to find that crew plaintiffs here are entitled to summary judgment against Alert. It is far from clear whether the jury in the passenger cases decided if it was the combined actions of Pan Am and Alert or the separate actions of one or the other that proximately caused the disaster, and as our Court of Appeals has instructed, "[a] reasonable doubt as to what was decided in the first action should preclude the drastic remedy of foreclosing a party from litigating an essential issue." McNellis v. First Federal Sav. and Loan Ass'n, 364 F.2d 251, 257 (2d Cir.1966).

CONCLUSION
The issues of whether Alert by itself breached any duty owed to the crew members of Flight 103 and whether such breach was a proximate cause of the death of the crew members were not necessarily decided in the passenger cases, and crew plaintiffs may not collaterally estop Alert from litigating these issues. Therefore, because there remains an issue of material fact that must be presented to a jury, crew plaintiffs' motion must be and the same hereby denied.
SO ORDERED.
NOTES
[1] Each crew member was employed by Pan American World Airways, Inc. and was working on-board Flight 103 just before the disaster.
[2] Pan Am Corp. was a Delaware holding company (and still may be if not yet dissolved) with its principal place of business in New York. In December, 1988, Pan Am Corp. owned one hundred percent of the stock of PAWS and Pan Am. Pan Am was (and still may be if not yet dissolved) a New York corporation with its principal place of business in New York. PAWS was (and still may be) a Florida corporation with its principal place of business in Cape Canaveral, Florida. PAWS was a wholly owned subsidiary of Pan Am Corp. until May 31, 1989 when Pan Am Corp. sold its stock in PAWS to Johnson Control, Inc. See In re Air Disaster at Lockerbie, Scotland on December 21, 1988, 776 F.Supp. 710, 711 n. 2 (E.D.N.Y.1991). Alert was (and still may be) a corporation organized under the laws of Florida. Before July 1, 1989, Alert's principal place of business was in Valley Stream, New York. On July 1, 1989, Alert relocated its principal place of business to Miami, Florida. Id. Before the sale of PAWS to Johnson Control, Inc., Alert was a wholly owned subsidiary of PAWS. When the stock in PAWS was sold to Johnson Control, Alert became a wholly owned subsidiary of Pan Am Corp. Id.

The complaints in the passenger cases named as defendants Pan Am, PAWS, Alert, and Pan Am Corp., but immediately before commencement of the trial passenger plaintiffs voluntarily dismissed the claims against PAWS and Pan Am Corp., leaving Pan Am and Alert as defendants.
[3] The liability of carriers is limited to $75,000 per passenger under Article 22 of the Warsaw Convention as supplemented by the 1966 Montreal Agreement. Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, T.S. 876 (1934), reprinted at note following 49 U.S.C.App. § 1502 (Warsaw Convention); Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, CAB Agreement 18900, note following 49 U.S.C.App. § 1502 (approved by CAB Order E-23680, May 13, 1966, 31 Fed.Reg. 7302) (Montreal Agreement). If, however, plaintiffs prove wilful misconduct, then the liability limits are inapplicable (Article 25).
[4] There are a total of 15 claims brought by the survivors and personal representatives of crew members. One crew claim is pending in a Florida State court; the final claim is represented by separate counsel and is pending before this Court but is not part of this motion. Therefore, this motion for partial summary judgment is brought on behalf of 13 of the deceased crew members.
[5] Crew plaintiffs do not move for summary judgment against Alert on Counts V and VI, which assert claims for breach of contract. Moreover, crew plaintiffs do not move for summary judgment against PAWS on any count.
[6] Indeed, this Court stated that "[a] reasonable jury almost certainly would have found that proper x-ray screening, although inferior to passenger-baggage matching, would also have led to detection of the bomb." November, 1992 Mem. & Ord. at 9 n. 5.