OPINION OF THE COURT
Wesley, J.
On May 18, 1990, after Marie Shambeau informed defendant that she intended to end their relationship, defendant assaulted her by stabbing and strangling her. After defendant was indicted, defendant pleaded guilty to a charge of attempted murder in the second degree. On January 22, 1991, defendant was sentenced to a term of incarceration of Ph to 221/a years. Seven weeks later, Marie Shambeau died.
An indictment was thereafter returned charging defendant with second degree murder. Defendant successfully moved to dismiss that indictment on double jeopardy grounds, but the Appellate Division reversed and reinstated the indictment. On appeal, this Court affirmed, holding that "[njeither defendant’s asserted belief that his plea would end all criminal exposure stemming from his conduct nor the fact that Shambeau’s death was reasonably foreseeable at the time of the plea can prevent as a matter of double jeopardy a subsequent prosecution for murder in the second degree” (People v Latham, 83 NY2d 233, 239). We distinguished cases from other jurisdictions cited by defendant in which it was established that, "at the time of plea *798 both the defendant and the prosecution intended the plea to close the matter forever,” noting "[tjhat is not the case before us” (id.).
At trial, the People introduced factual admissions made by defendant during the attempted murder plea allocution. Defendant was found guilty of first degree manslaughter, and sentenced to a term of 81/3 to 25 years’ incarceration.
On appeal, the Appellate Division reversed, holding that defendant had not effectively waived his privilege against self-incrimination at the time of his plea colloquy because he had not been advised that, should Marie Shambeau die, he would be indicted for murder and that his colloquy could then be used against him (234 AD2d 864). We now reverse.
"A trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences” (People v Ford, 86 NY2d 397, 402-403). Nevertheless, because a court could not possibly advise a defendant on all the particular ramifications of a guilty plea, we have drawn a distinction between "direct” consequences which have "a definite, immediate and largely automatic effect on defendant’s punishment,” and "collateral” consequences which "are peculiar to the individual and generally result from the actions taken by agencies the court does not control” (People v Ford, supra, 86 NY2d, at 403). Although a defendant must be advised of direct consequences, a defendant need not be advised of collateral consequences before it can be said that the defendant’s plea " 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant’ ” (People v Ford, supra, at 403, quoting North Carolina v Alford, 400 US 25, 31).
It is important to note that the defendant in Ford attacked the voluntariness of his plea by a motion to vacate the judgment of conviction, which was treated as a motion under CPL 440.10. The voluntariness of a plea is challenged prior to sentencing by a motion to withdraw the plea under CPL 220.60, or after sentencing by a motion to set aside the plea under CPL 440.10.* If defendant had successfully moved to withdraw or to set aside the plea to attempted murder as involuntary, the allocution could not have been used against defendant in *799 the later trial (People v Moore, 66 NY2d 1028; see also, People v Curdgel, 83 NY2d 862, 864-865; cf., People v Evans, 58 NY2d 14).
In the absence of such a motion, however, the plea and the resulting conviction of attempted murder are presumptively voluntary, valid and not otherwise subject to collateral attack (see, United States v Broce, 488 US 563, 574). Defendant failed to make use of the available procedural vehicle to seek judicial review of whether his plea was voluntary. This is not a case in which this Court should devise a new procedure for defendant to attack the voluntariness of the plea (see, People v Knack, 72 NY2d 825, 827; cf., People v Bachert, 69 NY2d 593). The Appellate Division improperly permitted defendant to convert his direct appeal of his manslaughter conviction into an application to review the voluntariness of his plea to attempted murder. To allow such a consequence would abrogate the existing, available mechanism and would undercut the validity of judgments of conviction premised on guilty pleas.
Because the plea is presumed voluntary, there was no bar to the People’s use of the plea allocution at defendant’s murder trial. The Fifth Amendment only precludes the use of statements obtained under legal compulsion (People v Sobotker, 61 NY2d 44, 47). Thus, we need not address the issue of whether the use of the plea allocution at defendant’s trial was not a "direct” consequence of the plea.
Accordingly, the order of the Appellate Division should be reversed, and the case remitted to the Appellate Division for consideration of the facts (CPL 470.25 [2] [d]; 470.40 [2] [b]).
Chief Judge Kaye and Judges Titone, Bellacosa, Smith and Ciparick concur; Judge Levine taking no part.
Order reversed, etc.

 In the "rare case” where the defendant’s recitation of the facts underlying the crime calls into question the voluntariness of the plea, a reviewing court on a direct appeal of the plea may address the voluntariness of a plea in the absence of such a motion (People v Lopez, 71 NY2d 662, 666).