Stanford MURDEN, Petitioner,

v.

Christopher ARTUZ, Respondent.

No. 98–CV–2619.

United States District Court, E.D. New York.

Sept. 7, 2001.

378

Stanford Murden, Collins, NY, for Petitioner.

## ORDER

GERSHON, District Judge.

Stanford Murden brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions in the New York State Supreme Court, Kings County, of arson in the second degree and murder in the second degree.

Petitioner pleaded guilty to the charge of arson in the second degree on February 5, 1982. During his plea allocution, petitioner stated that, on July 15, 1981, he started a fire at 306 Montauk Avenue in Brooklyn by lighting some clothing with a match in a second floor apartment. Petitioner was sentenced on June 8, 1982 to a term of imprisonment of seven and one half to 15 years.

On December 6, 1983, Wendy Kornegay died from injuries, which, according to the State, were causally related to the fire at 306 Montauk Avenue. In order to escape the fire, Ms. Kornegay had jumped from a window in her third-floor apartment. She remained hospitalized until her death over two years later. After Ms. Kornegay died, the State charged petitioner with two counts of murder in the second degree (one count of felony murder and one count of depraved indifference murder), and, following a jury trial, petitioner was convicted on the felony murder count.[1] The State argued at trial that the arson was the underlying felony that had caused Ms. Kornegay's death, and petitioner's plea allocution was admitted into evidence. On April 25, 1985, petitioner was sentenced to a term of imprisonment of 25 years to life to run concurrently with his sentence on the prior arson conviction.

The instant petition was received by the pro se clerk's office on April 6, 1998. Petitioner raises the following claims: (1) that his plea on the arson charge was not voluntary and, therefore, that his plea allocution should not have been admitted at the subsequent murder trial; (2) that the Double Jeopardy Clause was violated because he was prosecuted for two crimes arising out of the same incident; (3) that the State failed to prove beyond a reasonable doubt that the arson had caused Ms. Kornegay's death; (4) that the trial court made various errors in its final charge to the jury; and (5) that he was deprived of the effective assistance of counsel. For the following reasons, the petition is denied.[2]

### Voluntariness of Petitioner's Plea

█ Petitioner argues that his decision to plead guilty on the arson charge was not made voluntarily because he did not know that the plea could be used against him in a subsequent murder prosecution. As a result, he claims that the plea allocution should not have been admitted at trial.

Petitioner raised this claim initially through counsel in 1995 in a motion to vacate his murder conviction pursuant to N.Y.Crim. Proc. Law § 440.10. He supported the motion with a copy of the plea minutes and his sworn affidavit, in which he stated the following:

> At no time before I was sentenced for arson in the second degree was I fully

---

1. During the charge conference, the trial judge announced that he would submit only the felony murder count to the jury. Tr. at 345.

2. Although it appears that petitioner's challenge to his arson conviction may be untimely, the State has not raised the statute of limitations issue, and I decline to do so *sua* sponte. In any event, the resolution of the timeliness issue would not affect the outcome of the petition because, as is explained more fully below, the only claim in the petition that could be read to relate to the arson conviction (*i.e.*, petitioner's claim that his plea was involuntary) is without merit.

apprised of the consequences of pleading guilty. [Defense counsel], the District Attorney, and Judge Egitto all failed to inform me that I could be convicted again for another offense that might arise in the future from the July 15, 1981 fire. In fact, I believed that I could never again be charged and convicted for any crime stemming from this incident ...

Furthermore, I was not told that my plea to arson could be used against me at a later murder trial arising from the very same incident to which I plead guilty ...

If my attorney, the District Attorney or the court would have disclosed to me what the consequences of my plea were, I would not have plead guilty to arson in the second degree.

In a decision dated June 19, 1997, New York Supreme Court Justice Larry D. Martin wrote that he was

persuaded that Defendant was not advised that his plea allocution could be used against him in a subsequent murder trial. Defense counsel submitted a copy of the plea minutes. There is no indication on the record that such a possibility was discussed. The judge did advise the Defendant of a number of rights that he was giving up, among them his right to remain silent but without any indication that his waiver of that right might expose him to the use of his admissions at such a subsequent trial. Justice Martin explained that he "would feel constrained to ... vacate the judgment" based on the authority of *People v. Latham*, 234 A.D.2d 864, 652 N.Y.S.2d 328 (3d Dep't 1996).[3] However, considering that petitioner's videotaped confession to the arson (which was determined by the trial court to be voluntary on the basis of a pretrial evidentiary hearing) had also been admitted at trial, Justice Martin concluded that the introduction of petitioner's plea allocution "was merely duplicative" and denied petitioner's motion. On November 17, 1997, the Appellate Division denied petitioner's application for leave to appeal.

A plea of guilty " 'entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless induced by threats ..., misrepresentation ..., or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business.' " *Bousley v. United States*, 523 U.S. 614, 619, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). The Second Circuit has held that "[c]ertain possible consequences of a guilty plea are collateral rather than direct" and that these collateral consequences "need not be explained to the defendant in order to ensure that the plea is voluntary." *United States v. Saler-*

---

**3.** In that case, the defendant had pleaded guilty to attempted murder. The victim later died, and the defendant was then indicted for murder. After a jury trial, at which his plea allocution was admitted into evidence, the defendant was convicted of manslaughter. The Appellate Division ordered a new trial and explained that it could not "envision a more direct consequence of a plea than the use of a defendant's factual admissions during the plea allocution at a subsequent murder trial arising out of the same transaction." *Latham*, 234 A.D.2d at 865, 652 N.Y.S.2d 328.

The New York Court of Appeals reversed a few months after Justice Martin issued his opinion. *See People v. Latham*, 90 N.Y.2d 795, 666 N.Y.S.2d 557, 689 N.E.2d 527 (1997). Without reaching the question whether the use of the plea allocution was a direct or collateral consequence of the plea, the Court of Appeals held that the defendant could not collaterally attack the voluntariness of his plea when he had not previously moved to withdraw the plea or to set it aside. *See id.* at 798–99, 666 N.Y.S.2d 557, 689 N.E.2d 527.

*no*, 66 F.3d 544, 550–51 (2d Cir.1995) (quoting *United States v. United States Currency*, 895 F.2d 908, 915 (2d Cir.1990)) (internal quotations omitted). "[W]hether a consequence of a plea is direct or collateral depends on whether the undesired consequence is 'definite, immediate, and largely automatic.'" *Salerno*, 66 F.3d at 551 (quoting *United States Currency*, 895 F.2d at 915).

Petitioner argues that the subsequent use of his plea allocution was a direct consequence of his plea and that the fact that he was never advised of this consequence rendered the plea involuntary. When evaluating this claim, I treat as presumptively correct Justice Martin's factual finding that petitioner was not advised that his plea allocution could be used against him in a subsequent murder trial. *See* 28 U.S.C. § 2254(e)(1). With respect to the legal question whether the use of petitioner's plea allocution under these circumstances violated his federal constitutional rights, I review Justice Martin's decision only to determine whether it involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

The Supreme Court has never held that federal due process requires a defendant to be advised that his guilty plea may be used against him in a subsequent criminal prosecution. For that reason alone, petitioner's claim may be denied. *See Mask v. McGinnis*, 252 F.3d 85, 89–90 (2d Cir. 2001) ("petitioner is entitled to habeas relief only upon a showing that the state courts unreasonably applied clearly established *Supreme Court* precedent") (emphasis in original).

Nor, for that matter, has petitioner identified any decision of any federal court that has addressed this question. Indeed, the Second Circuit rejected a similar claim in *United States v. Persico*, 774 F.2d 30, 33 (2d Cir.1985), a case construing the requirements of Fed.R.Crim.P. 11. After explaining that Rule 11 "requires advice concerning only the direct consequences of a guilty plea," the Second Circuit concluded that Rule 11 did not require a federal district court to advise the defendants that the crimes to which they had pleaded guilty could be used as predicate acts in a subsequent RICO prosecution. *Id.*

There is no reason to reach a different result in petitioner's case. Although I recognize that, unlike the defendants in *Persico*, petitioner did not have to take any action other than to plead guilty before he faced the consequence of his plea, *see Persico*, 774 F.2d at 33 (Rule 11 "in no event requires advice that the conduct underlying the plea may become a predicate act for criminal offenses continued by the defendant after the date of such conduct"), the use of his allocution in a separate proceeding does not qualify as "automatic" under Second Circuit law. *See United States Currency*, 895 F.2d at 916 n. 7 (explaining that civil forfeiture is not an automatic consequence of a guilty plea because it can occur only after a separate proceeding in which the defendant is given an opportunity to present evidence that the property should not be forfeited). Nor was the subsequent use of petitioner's plea allocution an "immediate" or a "definite" consequence of his plea. *Salerno*, 66 F.3d at 551 (quoting *United States Currency*, 895 F.2d at 915). Indeed, it was contingent upon, not only the death of Wendy Kornegay over two years after petitioner pleaded guilty to arson, but also the independent decision of the State to prosecute petitioner for her murder. Under these circumstances, I cannot conclude that due process required either the court or counsel to foresee that petitioner's plea allocution might be used against him in a subse-

quent murder trial and to inform him of that possibility. *Cf.* Pet'r Reply Mem. in Supp. of § 440.10 Mot. at 3 n. 1 (acknowledging that, at the time he pleaded guilty to arson, it "was unlikely that a homicide proceeding would be held" because "for two years after the incident, there was no indication that Wendy Kornegay would die from the injuries she allegedly sustained as a result of the fire"). Therefore, it was objectively reasonable for the state court to conclude there was no constitutional error in admitting petitioner's plea allocution at his subsequent trial, and his claim for habeas corpus relief must be denied.

### Double Jeopardy

■ Petitioner also argues that he was twice prosecuted for the same offense in violation of the Double Jeopardy Clause.[4] The test for determining whether two crimes constitute the same offense for double jeopardy purposes was set forth by the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Under *Blockburger,* an individual may not be successively prosecuted for both a greater and lesser-included offense because the lesser offense requires no proof beyond that which is required for conviction of the greater offense. *See Brown v. Ohio,* 432 U.S. 161, 168–69, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Based upon this analysis, "the crime generally described as felony murder" is not, for double jeopardy purposes, "a separate offense distinct from its various elements;" rather, the Supreme Court

treats the substantive criminal offense underlying the felony murder charge as "a species of lesser-included offense." *Illinois v. Vitale,* 447 U.S. 410, 420–21, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *See also Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (per curiam) (conviction of felony murder, where robbery with firearms was the underlying felony, barred subsequent prosecution on charge of robbery with firearms).

■ Petitioner's case falls within an exception to the general rule outlined in *Blockburger* and its progeny. In a case very similar to petitioner's, *Diaz v. United States,* 223 U.S. 442, 449, 32 S.Ct. 250, 56 L.Ed. 500 (1912), the defendant was initially found guilty of assault and battery. When the victim of the attack subsequently died, the defendant was charged with homicide. The Supreme Court held that these two crimes were separate offenses for double jeopardy purposes: "At the time of the trial for [assault and battery] the death had not ensued, and not until it did ensue was the homicide committed. Then, and not before, was it possible to put the accused in jeopardy for that offense." *Id.* Citing *Diaz,* the Supreme Court later explained, "An exception [to the general rule prohibiting successive prosecutions for a greater and lesser-included offense] may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence." *Brown,* 432 U.S. at 169 n. 7, 97 S.Ct. 2221 (citing *Diaz,* 223 U.S. at 448–49, 32 S.Ct. 250).

Here, as in *Diaz,* Wendy Kornegay did not die until over two years after petition-

---

4. Although petitioner also states that he was deprived of his statutory protection against double jeopardy, this is not a federal claim that is cognizable on a petition for habeas corpus.

er had pleaded guilty to arson. As a result, the State could not have proceeded on the felony murder charge at the outset since the necessary fact of Ms. Kornegay's death had not yet occurred. Accordingly, petitioner's felony murder conviction was not barred by the Double Jeopardy Clause, and his claim for habeas corpus relief on this ground is denied.

### Sufficiency of the Evidence

Petitioner additionally claims that the evidence at trial did not establish beyond a reasonable doubt that Wendy Kornegay's death was caused by the arson at 306 Montauk Avenue. He argues that the evidence showed Ms. Kornegay received negligent medical care and that this intervening act absolved him of criminal liability for Ms. Kornegay's death.

■ A district court should grant habeas corpus relief based on a claim of insufficiency of the evidence only if it finds, upon the record evidence adduced at trial, that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To determine the essential elements of the crime, the habeas corpus court must look to state law. *See id.* at 324 n. 16, 99 S.Ct. 2781. Under New York law, the State was required to prove beyond a reasonable doubt that, in the course of and in furtherance of the crime of arson or in immediate flight therefrom, petitioner caused the death of Wendy Kornegay. *See* N.Y. Penal Law § 125.25[3]. This means that petitioner's actions must have been "an actual contributory cause of death, in the sense that they 'forged a link in the chain of causes which actually brought about the death.'" *In re Anthony M.,* 63 N.Y.2d 270, 280, 481 N.Y.S.2d 675, 471 N.E.2d 447 (1984) (quoting *People v. Stewart,* 40 N.Y.2d 692, 697, 389 N.Y.S.2d 804, 358 N.E.2d 487 (1976)). Pe-

titioner's "acts need not be the sole cause of death." *Anthony M.,* 63 N.Y.2d at 280, 481 N.Y.S.2d 675, 471 N.E.2d 447. Rather, where the necessary causative link is established, other causes, such as negligent medical treatment, will not relieve petitioner of responsibility for Ms. Kornegay's death. *See id.; People v. Kane,* 213 N.Y. 260, 270, 107 N.E. 655 (1915). "By the same token, death need not follow on the heels of injury. Even an intervening, independent agency will not exonerate [petitioner] unless 'the death is solely attributable to the secondary agency, and not at all induced by the primary one.'" *Anthony M.,* 63 N.Y.2d at 280, 481 N.Y.S.2d 675, 471 N.E.2d 447 (quoting *Kane,* 213 N.Y. at 270, 107 N.E. 655).

■ Here, a rational trier of fact could have found beyond a reasonable doubt that petitioner's actions in starting the fire at 306 Montauk Avenue set a chain of events into motion that culminated in Wendy Kornegay's death from respiratory arrest. Petitioner argued in the state court that Ms. Kornegay died because her tracheostomy tube may have become dislodged and/or blocked with saliva, problems that he claimed could have been corrected had the hospital provided her with appropriate care and supervision. However, a rational trier of fact could have found beyond a reasonable doubt that the reason Ms. Kornegay needed the tracheostomy was that the injuries she sustained when she jumped from her third-floor window and the medical care she required to treat those injuries made it impossible for her to breathe on her own. Thus, even if the jury had accepted petitioner's theory that hospital personnel negligently cared for Ms. Kornegay, the evidence at trial was sufficient to show beyond a reasonable doubt that any negligence was merely a contributory cause of her death that did not break the chain of causation. As a

result, this claim for habeas corpus relief must be denied.

### Jury Charge

Petitioner also raises three challenges to the jury charge. First, he claims that the trial judge's charge on causation was erroneous. Second, he claims that the charge improperly assigned to the jury the task of determining whether a declaration against penal interest was admissible. Third, he claims that the charge improperly marshaled the evidence in favor of the prosecution.

#### Causation Charge

Petitioner argues that the trial judge erred in failing to instruct the jury that gross negligence by the hospital would have constituted an intervening cause sufficient to relieve petitioner of criminal liability for Wendy Kornegay's death. The relevant portion of the court's charge read:

[O]ne accused of homicide, as in this case, cannot be convicted unless it is shown that he caused the death of the deceased ... This means that the People must at least prove that the defendant's conduct was an actual cause of death in the sense that it forged a link in the chain of causes which actually brought about the death of Wendy [Kornegay.] However, an obscure or merely probable connection between the alleged arson and death will, as in every case of alleged crime, require acquittal of the charge of any degree of homicide.

The defendant may be held to have caused the death even though death did not immediately follow the injury. The defendant is responsible for the death although other factors entering after the injury have contributed to the fatal result if defendant's action necessitated the other factors or if the defendant's action together with the other factors caused the death. If the injury sus-tained by the [deceased] necessitated medical treatment and that medical treatment, whether properly given or not caused the death, then the defendant would be responsible for the death. If, however, the medical procedure was not necessitated by the defendant's actions and the medical procedure was the sole cause of death, then the medical procedure is an intervening cause of death and defendant is not guilty of the crime. If the medical procedure was not necessitated by the defendant's conduct but the medical procedures and the injuries sustained because of the defendant's conduct together contributed to the death, the defendant is responsible for the death. If the deceased died of a medical condition which was not caused by the defendant's action, then that condition is an intervening cause and the defendant is not responsible for the death. If the deceased died of a medical condition which was caused by the defendant's conduct or in addition to injuries caused by the defendant's action, the defendant is responsible for the death.

Tr. at 440–42. In response to a note from the jury, the trial judge later repeated these same instructions. See Tr. at 451–54.

The State argues that petitioner's claim is procedurally barred. Federal habeas corpus review of a state conviction is prohibited if a state court judgment is based on an "adequate and independent state ground," Harris v. Reed, 489 U.S. 255, 261, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), such as a state procedural bar rule. In this case, the Appellate Division rejected petitioner's claim, finding that his "contentions of error in the trial court's charge were unpreserved for review and, in any event, lack merit." People v. Murden, 131 A.D.2d 704, 705, 516 N.Y.S.2d 907 (2d

Dep't 1987).[5] Although the Appellate Division did not cite a specific procedural bar rule or a state court decision applying a procedural bar rule, the State had argued in its brief that petitioner's claim was unpreserved because defense counsel failed to make a "timely request or objection."

During the charge conference, the trial judge asked counsel whether there was any objection to his instruction on "causal effect." Tr. at 345–46. Although defense counsel initially replied, "There is none by the defense," Tr. at 346, he later stated that he had, in fact, voiced an objection during a previous off-the-record conference. Defense counsel stated:

Your Honor, at this time I have consented that I have read these charges and they are agreeable to me. We have spent a great deal of time today, I, especially, trying to convince both Your Honor and the district attorney as well as other staff that it is my view that if the tube had dislodged and was improperly placed and that had caused [Ms. Kornegay] to asphyxiate and was the sole cause of her death, that the defendant would not be responsible. The Court, off the record in these lengthy discussions, has told me that they do not accept this argument and my concession at this time in agreeing that these charges are acceptable are with the exception that I would have asked that this point of view be conveyed. I am accepting these as though this point of view that I raised earlier had been overruled and going along as best I can with the Court's contentions at which point (and I think that the charges as they appear at this point, with that under consideration) are fair to the defendant.

Tr. at 347–48. The trial judge then responded:

[Defense counsel] is correct in that he has raised this objection at length during the very extended and extensive off-the-record discussions of the law with respect to the causal relationship under discussion here and with respect to this last point, the Court has taken the position that if the deceased were in the hospital undergoing this treatment as a result of injuries suffered from the fire allegedly set by the defendant and the tube placed in her throat during the tracheotomy became dislodged and was a factor in her death, a major factor in her death, that this does not absolve the defendant of responsibility which responsibility could lead to a verdict of guilty in this case since, in the Court's view, the reason that the deceased had to undergo this procedure was the injury she suffered as a result of the fire set presumably allegedly by the defendant in this case. That's the Court's view.

Tr. at 348. Defense counsel did not state any objection to the causation charge as given.

The State has not cited any authority that suggests New York law required defense counsel to renew his objection when the judge read the charge to the jury. Absent such a requirement, it is unclear why the Appellate Division held that petitioner's claim was unpreserved. Although defense counsel may have been somewhat inartful and did not use the precise words "gross negligence," he did, in fact, challenge the causation charge on the same ground that was later raised on appeal. Because there is, therefore, some question as to the adequacy of the Appellate Division's reliance on a procedural bar, *see*

---

5. The Appellate Division was the last court to issue a reasoned opinion on petitioner's claim. The Court of Appeals denied leave to

appeal on September 10, 1987 without comment. *See People v. Murden,* 70 N.Y.2d 753, 520 N.Y.S.2d 1029, 514 N.E.2d 1381 (1987).

*Williams v. Lane,* 826 F.2d 654, 659–61 (7th Cir.1987) (state court's finding of procedural default did not rest on an adequate state ground where record showed defense counsel had, in fact, made the necessary objection at trial); *cf. Garcia v. Lewis,* 188 F.3d 71, 77–82 (2d Cir.1999) (for state ground to be adequate, finding of procedural default must be supported by a "fair or substantial basis" in state law), I will address the merits of petitioner's claim.

█ In order to obtain a writ of habeas corpus based on an alleged error in the state court's charge to the jury, petitioner must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to [him] by the Fourteenth Amendment." *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Petitioner's claim must fail because he cannot show that the trial judge misstated New York law on causation. Petitioner's request to instruct the jury that grossly negligent behavior by the hospital would relieve petitioner of responsibility for Wendy Kornegay's death appears to derive from dictum in *People v. Eulo,* 63 N.Y.2d 341, 359, 482 N.Y.S.2d 436, 472 N.E.2d 286 (1984). In that case, the court noted that intervening medical procedures (*i.e.,* removing the victims' organs and disconnecting artificial life support devices) would interrupt the chain of causation if the victims had been pronounced dead prematurely "due to the gross negligence or the intentional wrongdoing of doctors, as determined by a grave deviation from accepted medical practices." However, the New York Court of Appeals later clarified that the dictum in *Eulo* was not intended to create a "negligence/gross negligence dichotomy on the issue of causation" and that the "test for relief from

criminal responsibility for a death … remains whether the death can be attributed solely to the negligent medical treatment." *People v. Griffin,* 80 N.Y.2d 723, 727, 594 N.Y.S.2d 694, 610 N.E.2d 367 (1993).[6] Thus, by instructing the jury that petitioner could not be found guilty of felony murder if Ms. Kornegay's "medical procedure was not necessitated by the defendant's actions and the medical procedure was the sole cause of death," the trial judge accurately described the law of causation in New York. Because petitioner cannot establish that the causation charge was erroneous as a matter of state law, he cannot establish that his due process rights were violated and his claim must be denied.

### Declaration Against Penal Interest Charge

Petitioner also challenges the trial court's instruction to the jury on how to evaluate a statement allegedly made by petitioner's former girlfriend, Sharon Glover, in which she confessed to setting the fire at 306 Montauk Avenue. According to petitioner, the charge improperly shifted the responsibility for making certain preliminary factual determinations, such as whether the statement was corroborated and whether Ms. Glover realized she was subjecting herself to possible criminal prosecution, from the court to the jury. The State argues that this claim is procedurally barred.

█ In order to exhaust a claim for federal habeas corpus relief, a petitioner must first present the claim to the highest court of the state. *See Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991). Here, petitioner included his claim that the declaration against penal interest instruction was

---

**6.** I do not read this case as effecting a change in the law, and, therefore, it is relevant to the

petition notwithstanding the fact that it was decided after petitioner's trial.

erroneous in the brief he submitted to the Appellate Division on his direct appeal. After the Appellate Division affirmed his conviction, petitioner sought leave to appeal to the New York Court of Appeals in a letter from his attorney. The letter stated, "The issue which we seek to raise in the Court of Appeals is that denominated Point I in our brief, whether the evidence failed to prove beyond a reasonable doubt that Wendy Kornegay's death was not caused by an intervening event." Although the letter did not mention any other issues, petitioner did enclose a copy of his Appellate Division brief.

Because petitioner's letter mentioned only the causation claim and his appellate brief was attached without alerting the court to any particular issues therein, petitioner failed to present his claim concerning the declaration against penal interest instruction to the New York Court of Appeals. *See id.* at 120 (finding that petitioner who raised one issue in his application for leave to appeal, without mentioning two other federal constitutional claims that were addressed in the attached Appellate Division brief, had not fairly presented the two other federal constitutional claims); *see also Jordan v. Lefevre,* 206 F.3d 196, 198–99 (2d Cir.2000) ("arguing one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement"). Thus, although unexhausted, this claim is now procedurally barred because petitioner can no longer seek leave to appeal to the New York Court of Appeals. Petitioner makes neither a showing of cause and prejudice, nor a showing of actual innocence, and, as a result, this claim must be dismissed.

### Marshaling of the Evidence

Petitioner's final challenge to the jury charge is his claim that the trial judge unfairly marshaled the evidence in favor of the prosecution. Respondent argues that this claim is procedurally barred because the New York State Supreme Court rejected it on an adequate and independent state ground.

According to respondent, petitioner initially raised this claim in a *pro se* motion to vacate his judgment of conviction pursuant to N.Y.Crim. Proc. Law § 440.10. I cannot agree that petitioner's claim is procedurally barred. The New York State Supreme Court denied petitioner's Section 440.10 motion "for the reasons set forth in the answering affirmation of the District Attorney submitted in opposition." However, the State opposed petitioner's motion both on procedural grounds and on the merits, making the basis for the state court's decision unclear. Absent a plain statement that the state court intended to rely upon state procedural grounds when it rejected petitioner's claim, I am not precluded from addressing the merits. *See Ortiz v. Keohane,* CV–94–0124, 1995 WL 669904, *4 (E.D.N.Y. Nov.5, 1995) (state court that denied petitioner's claim "for the reasons stated in the [P]eople's responding papers" did not clearly and expressly base its decision upon an independent and adequate state ground).

The only part of the charge where the state court arguably marshaled the evidence was during its identification instruction. *See* Tr. at 429–34. After explaining to the jury that the State had the burden to prove beyond a reasonable doubt that petitioner was the person who committed the arson, the trial judge then proceeded to summarize the prosecution's identification evidence. The trial judge stated that, in order to prove that petitioner was the perpetrator, the State had offered the testimony of three witnesses who testified that they saw petitioner setting

fire to the building, the testimony of two witnesses who testified that they heard petitioner threaten to burn down the building, petitioner's videotaped statement to the Assistant District Attorney and his plea of guilty to arson. The trial judge noted that petitioner contended his guilty plea was involuntarily made and then instructed the jury on how to evaluate whether a plea is knowing and voluntary.[7] The only other arguable reference in the identification charge to evidence offered by the defense was a general instruction that the jury "must also take into consideration all of the evidence which has been offered to establish that the defendant is or is not the perpetrator." Tr. 434.

Although the identification instruction could have been more balanced, when "viewed in the context of the overall charge," I cannot conclude that it "so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147, 94 S.Ct. 396. The trial judge instructed the jurors that they were "the sole and exclusive judges of the facts in this case," Tr. at 408, that it was their recollection of the evidence that mattered, not what the judge said the evidence was, Tr. at 408–09, that the judge had "no power to tell you what the facts are or to tell you that one fact is more important than another fact," Tr. at 410, that the jurors were "to draw no inference whatsoever to [his] reference or lack of reference to any of the testimony or other evidence," Tr. at 435, and that the State had the burden to prove the defendant's guilt, including the identification of the defendant

as the person who committed the arson, beyond a reasonable doubt, Tr. at 418–25, 429–34. When considered in this context, the identification charge did not deprive petitioner of due process, and his claim for habeas corpus relief on this ground is denied.

### Ineffectiveness of Counsel

Finally, petitioner argues that his trial counsel was ineffective for (1) failing to consult with or offer the testimony of an expert; (2) failing to challenge petitioner's prosecution for murder on double jeopardy grounds; and (3) failing to object to the admission of petitioner's plea allocution into evidence at his murder trial on the ground that he had not been advised when he pleaded guilty that the allocution could be used against him in a subsequent trial.[8] As for the part of petitioner's claim that is based on counsel's failure to hire an expert, respondent argues that the New York State Supreme Court rejected that claim based on an adequate and independent state ground. Petitioner raised this claim in his *pro se* Section 440.10 motion, which, as explained above, was denied by the state court "for the reasons" set forth in the State's opposition papers. As was also explained, because that decision does not clearly and expressly rely upon state procedural grounds, petitioner's claim is not procedurally barred.

Turning to the merits, in order to establish that his constitutional right to the effective assistance of counsel was violated, petitioner must show both that counsel's

---

7. At trial, petitioner testified that he confessed and pleaded guilty to the arson in order to protect his girlfriend, who he claimed was responsible for the fire. Petitioner also testified that a police officer promised him that, if he confessed, he would receive a lenient sentence.

8. Defense counsel did move to suppress the plea on the ground that it had been induced by an implicit promise or threat and was involuntary. However, after the court held that this argument would waive petitioner's attorney-client privilege with respect to any conversations petitioner had had with his attorney concerning the plea, defense counsel withdrew the motion.

performance fell below the objective standards of reasonableness dictated by prevailing professional norms and that there was a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner cannot make such a showing.

■ First, petitioner cannot establish that his trial attorney was constitutionally ineffective based on his decision not to hire a medical expert. In general, whether or not to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review. *See United States v. Best,* 219 F.3d 192, 201 (2d Cir.2000) ("[C]ounsel's decision as to 'whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation' ") (citations omitted), *cert. denied,* 532 U.S. 1007, 121 S.Ct. 1733, 149 L.Ed.2d 658 (2001); *see generally Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance) (citations omitted); *but see Pavel v. Hollins,* 261 F.3d 210 (2d Cir.2001) (failure to call medical expert in sexual abuse case considered cumulatively with other errors constituted ineffective assistance); *Lindstadt v. Keane,* 239 F.3d 191, 199–205 (2d Cir.2001) (same). Although petitioner is correct that causation was a critical issue at trial, his argument that defense counsel would have been able to prove that the hospital's treatment of Wendy Kornegay was an intervening cause of her death if he had only hired an expert is based on nothing more than speculation. Petitioner has not come forward with affidavits or other admissible evidence showing that there is an expert witness who would have testified that any of the hospital's medical procedures were unrelated to Wendy Kornegay's fall. Absent such evidence, which could have created a reasonable doubt as to whether the hospital's care was the sole cause of Ms. Kornegay's death, petitioner has not shown that the outcome of his trial would have been any different had his attorney hired an expert.

■ Petitioner also cannot show that his trial attorney was ineffective for failing to challenge his murder prosecution on double jeopardy grounds. Defense counsel's decision not to raise a federal double jeopardy claim was objectively reasonable because, as is explained above, this claim would have been meritless. As for defense counsel's decision not to raise a state law double jeopardy claim, petitioner cannot show that he was prejudiced because the state court ultimately decided (and rejected) this claim on the merits when it was raised in petitioner's Section 440.10 motion notwithstanding the fact that defense counsel failed to make such a challenge at trial.

■ The final basis for petitioner's ineffectiveness claim is that his attorney failed to challenge the admissibility of petitioner's plea allocution on the ground that petitioner did not know when he pleaded guilty that the allocution could be used against him in a subsequent murder prosecution. However, at the time of petitioner's trial, no case law directly supported this legal argument. Although, after petitioner was convicted, New York state courts issued some favorable decisions in cases that were factually similar to his, *see People v. Callahan,* 126 A.D.2d 837, 838, 510 N.Y.S.2d 757 (3d Dep't 1987); *Latham,* 234 A.D.2d at 864–65, 652 N.Y.S.2d 328; *People v. Ortiz,* 141 Misc.2d 747, 752, 534 N.Y.S.2d 316 (N.Y. Sup.Ct., Richmond Co.1988), counsel's performance must be evaluated as of the time of his conduct and

**390**

without the benefit of hindsight. *See Strickland*, 466 U.S. at 689–90, 104 S.Ct. 2052. I cannot conclude that counsel's conduct fell below an objective standard of reasonableness merely because he did not think of and did not assert an apparently novel legal argument, which, in any event, would be unlikely to succeed if raised in state court today. *See Latham*, 90 N.Y.2d at 798–99, 666 N.Y.S.2d 557, 689 N.E.2d 527, *rev'g*, 234 A.D.2d 864, 652 N.Y.S.2d 328; *see also Dixon v. Miller*, 56 F.Supp.2d 289, 300 (E.D.N.Y.1999) (rejecting ineffectiveness claim where counsel failed to make an objection based on a case that had since been overruled; under these circumstances, "a finding of prejudice based solely on the possibility of a different outcome would bestow upon petitioner a windfall to which he is not entitled under current law"), *remanded on other grounds*, 216 F.3d 1071 (2d Cir.2000). Accordingly, petitioner's claim that his trial attorney was constitutionally ineffective is denied.

## CONCLUSION

For the foregoing reasons, the petition is denied. A certificate of appealability is granted solely on petitioner's claim that his arson plea was involuntarily made and that his allocution, therefore, should not have been admitted at his subsequent murder trial.

**SO ORDERED.**