**Victor SANCHEZ, Petitioner–Appellant,**

v.

**George DUNCAN, Respondent–Appellee.**

**Docket No. 00–2629.**

United States Court of Appeals, Second Circuit.

Argued: Nov. 1, 2001.

Decided: March 1, 2002.

Sally Wasserman, New York, NY, for Petitioner–Appellant.

Charles J. Hynes, District Attorney, Kings County, NY; Gwen M. Schoenfeld, Leonard Joblove, Assistant District Attorneys, for Respondent–Appellee.

Before FEINBERG, JACOBS and CABRANES, Circuit Judges.

FEINBERG, Circuit Judge.

Petitioner-appellant Victor Sanchez appeals from a judgment of the United States District Court for the Eastern District of New York (Weinstein, J.) denying his petition for a writ of habeas corpus. Sanchez filed his petition in 1999, challenging his 1994 conviction in New York Supreme Court, Kings County on multiple counts of conspiracy, sexual abuse, aggravated harassment and criminal contempt. Respondent-appellee George Duncan was Superintendent of the New York prison where Sanchez was incarcerated when he filed his petition. Although the habeas petition was based on numerous grounds, only one issue was certified for appeal pursuant to 28 U.S.C. § 2253: whether Sanchez's right to be present during sidebar voir dire conferences with prospective jurors was violated when the state trial court judge allegedly coerced him into waiving that right. The district court ruled that Sanchez had waived his right to be present at the questioning of the individual jurors, and that the state court had not unconstitutionally "influenc[ed]" that waiver. For the reasons that follow, we affirm the judgment of the district court.

## I. Background

In 1992 and 1993, Sanchez was charged with numerous crimes by the Kings County, New York District Attorney's office for allegedly sexually abusing, harassing in violation of a valid order of protection, and threatening to kill Yolanda Cordero, as well as conspiring to obtain a gun in order to kill Cordero, Cordero's friend, and a police officer who had previously arrested Sanchez. In 1994, Sanchez proceeded to trial on these charges in state court.

Prior to jury selection, the trial court provided Sanchez with a form that allowed him to waive the right recognized in *People v. Antommarchi,* 80 N.Y.2d 247, 590 N.Y.S.2d 33, 604 N.E.2d 95 (1992), to personally attend sidebar voir dire conferences with prospective jurors. After consulting with Sanchez, defense counsel advised the trial court that Sanchez would not waive his right to be present at the conferences. The trial court responded:

Fine. He declines to do so. Therefore, I want you to understand, Mr. Sanchez, when you do that, there will be a methodology—I'm not quite sure yet—which may or may not be to your liking that we have to employ to make sure that—in other words, you can't come out to the hall.

So, we have to do things in the courtroom, and the jury is going to be sent in and out and jerked around, and they may resent that. I hope they don't, but that's what the law prescribes.

You don't trust your lawyer to make—in other words, when a juror sometimes may want to come up to talk to me privately, they may not want to talk in front of you. They may say they are prejudiced, they don't like you, but they are embarrassed to say that in front of you, and I will excuse that juror. You certainly wouldn't want that juror on the jury, would you, Mr. Sanchez?

The following day, just before voir dire was to begin, the trial court discussed the procedures to be used:

Right now what I will do is at appropriate times, I will have all the jurors leave except the juror that wants to talk to us and we will do that. We will drag the [p]eople in. We will drag them out and so forth. We will do what we have to do, because the defendant has indicated he does not wish to have his attorney represent him in discussions with these

jurors where they wish to approach the bench. Is that correct; you won't waive under Antommarchi? That's his absolute right.

Defense counsel again informed the trial court that Sanchez did not want to waive his *Antommarchi* rights. The court responded, "He doesn't wish to waive. Fine. You want to prepare the court for the jurors please." Moments later, defense counsel told the trial court that Sanchez had changed his mind and now did want to waive his *Antommarchi* rights. Sanchez signed the waiver, and the trial court asked Sanchez if he understood that he was waiving his right "to be present during sidebar discussions during jury selection and at the trial." The court also asked if he understood that "[his] attorney will inform [him] right after what takes place and what's happening," and if "anybody threatened" him to waive his right. Sanchez indicated that he understood, that he was waiving his right to be present at the sidebars, and that nobody threatened him to do so.

The trial court also asked defense counsel if he felt that Sanchez was knowingly waiving his *Antommarchi* rights, to which defense counsel responded, "Yes." Defense counsel signed the waiver form, which stated that he advised Sanchez of his right to be present at sidebar conferences with prospective jurors and that Sanchez had voluntarily and understandingly waived that right.

During jury selection, there were bench conferences, none of which were recorded, with nine prospective jurors. Of the nine prospective jurors, seven were excused by the trial court immediately upon conclusion of the conferences, and two were excused after defense counsel's exercise of a peremptory challenge. None of them served on the jury.

In June 1994, the jury found Sanchez guilty of three counts of second degree conspiracy, in violation of N.Y. Penal Law § 105.15; one count of fourth degree conspiracy, in violation of N.Y. Penal Law § 105.10[1]; two counts of first degree sexual abuse, in violation of N.Y. Penal Law § 130.65[1]; three counts of second degree aggravated harassment, in violation of N.Y. Penal Law § 240.30[2]; and three counts of second degree criminal contempt, in violation of N.Y. Penal Law § 215.50[3].

Sanchez was sentenced as a second violent felony offender to a term of 41 to 82 years imprisonment. Sanchez appealed to the Appellate Division, Second Department on numerous grounds, including a claim that his federal and state law rights to be present during sidebar voir dire conferences were violated. The Appellate Division modified the sentence to 12 ½ to 25 years, but affirmed the conviction. *People v. Sanchez*, 252 A.D.2d 508, 675 N.Y.S.2d 140 (2d Dep't 1998). Leave to appeal to the New York Court of Appeals was denied in September 1998, *People v. Sanchez*, 92 N.Y.2d 930, 680 N.Y.S.2d 472, 703 N.E.2d 284, and a subsequent motion for reargument before the Appellate Division was denied in October 1998. An application for a writ of error coram nobis, based upon alleged ineffective assistance of counsel, was also denied by the Appellate Division. *People v. Sanchez*, 260 A.D.2d 510, 686 N.Y.S.2d 725 (2d Dep't 1999).

In April 1999, Sanchez filed a petition for a writ of habeas corpus in the Eastern District New York seeking relief on the grounds that (1) his speedy trial rights were violated; (2) his federal and state law rights to be present during sidebar voir dire conferences with prospective jurors were violated; (3) the conspiracy convictions were against the weight of the evidence; (4) the State improperly cross-examined him at trial about prior bad acts;

(5) his due process and equal protection rights were violated when the trial court denied, without a hearing, his third of three post-conviction motions to vacate the judgment; and (6) trial and appellate counsel were ineffective.

In September 2000, the district court denied Sanchez's habeas petition on all grounds. With respect to Sanchez's claim regarding his right to be present during sidebar voir dire conferences, the district court held that Sanchez "waived his right to be present on the questioning of individual jurors at the voir dire" and that "[t]he trial judge's influencing of that waiver was not constitutionally inappropriate." The court granted Sanchez a certificate of appealability only "on the issue of alleged coercion of the right to be present at the voir dire." In May 2001, we denied a motion by Sanchez to expand his certificate of appealability to include the five other grounds he raised in the district court, because Sanchez had not made a "substantial showing of the denial of a constitutional right" with regard to those issues. See 28 U.S.C. § 2253(c).

## II. Discussion

### A. Standard of Review

We review de novo the district court's denial of a habeas corpus petition. *E.g., Washington v. Schriver*, 255 F.3d 45, 52 (2d Cir.2001). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, once a state court has adjudicated a petitioner's claim on the merits,[1] a federal court may not grant a habeas petition on that claim unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir.2001).

### B. The Right to be Present at Voir Dire Sidebars

■ A criminal defendant has a federal constitutional right, under the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments, " 'to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.' " *Tankleff v. Senkowski*, 135 F.3d 235, 246 (2d Cir.1998) (quoting *Faretta v. California*, 422 U.S. 806, 819–20 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). "It is well-established that the impaneling of the jury is one such stage." *Id.*

Appellant Sanchez argues that, by improperly coercing him into waiving his right to be present at sidebar voir dire conferences, the state trial court violated his constitutional rights to be present at all stages of his trial. Appellee Duncan argues that while Sanchez may have had a statutory right under New York law to be present at sidebar voir dire conferences with prospective jurors, he had no federal constitutional right to be present at those conferences and thus presents no claim for which federal habeas corpus relief can be granted. *See, e.g., People v. Vargas*, 88 N.Y.2d 363, 375, 645 N.Y.S.2d 759, 668 N.E.2d 879 (1996) (holding that the New York right to be present at sidebars "is not rooted in the Constitution but rather in [section 260.20 of the New York Criminal Procedure Law,] which requires that '[a] defendant . . . be personally present during the trial of an indictment' "); *People v. Mitchell*, 80 N.Y.2d 519, 527, 591 N.Y.S.2d

**1.** Both parties agree that the federal constitutional claim at issue in this appeal was adjudi-

cated on the merits in state court.

990, 606 N.E.2d 1381 (1992) (holding that "the *Antommarchi* rule is not compelled by Federal law" and that "limited exclusion from side-bar discussions with prospective jurors . . . will not violate a defendant's [federal] constitutional right to be present"). Appellee further argues that Sanchez waived any right that he may have had to be present at the sidebars and also that any alleged error was harmless.

■ We agree with appellee that any alleged error at trial related to Sanchez's absence from voir dire bench conferences was harmless.[2] In *United States v. Feliciano*, 223 F.3d 102 (2d Cir.2000), we considered whether the Fifth and Sixth Amendment rights of three co-defendants were violated when a district court did not allow the defendants to approach the bench to hear sidebar voir dire conferences with prospective jurors. In that case, we first held that any error committed by the district court, assuming arguendo that there was an error, was not a structural error that " 'affect[ed] the framework within which the trial proceed[ed],' " and therefore did not require "automatic reversal." 223 F.3d at 111–12 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Because the

error was not structural, we then applied harmless error review and indeed determined the error to be harmless. We reached these conclusions under the facts of that case, where (1) defendants were present in the courtroom for the entire jury selection process; (2) most of the questions were answered by the jurors in open court; (3) defendants' counsel participated in the bench conferences and defendants had the opportunity to consult with their counsel at any time during the limited bench questioning; and (4) only two potential jurors who came to the bench for a sidebar conference were selected to serve on the jury. See *id.*

Similar circumstances existed at Sanchez's trial: (1) Sanchez was present in the courtroom for the entire jury selection process; (2) there were nine bench conferences during the entire voir dire; (3) Sanchez does not adequately refute appellee's assertions that defense counsel participated in the nine bench conferences and that Sanchez had ample opportunity to consult with his attorney about the conferences;[3] and (4) of the nine prospective jurors who attended bench conferences, *none* actually served on the jury. Under these facts, which are substantially similar to those in

**2.** We recognize that there is an open issue in this circuit as to what harmless error standard should be used, after the passage of AEDPA, by a federal habeas court reviewing a state court judgment. See, e.g., *Noble v. Kelly*, 246 F.3d 93, 101–02 n. 5 (2d Cir.), cert. denied, —— U.S. ——, 122 S.Ct. 197, 151 L.Ed.2d 139 (2001). We need not decide this question because we find that there was harmless error under either of the standards discussed in the *Noble* footnote and the cases cited therein.

**3.** Although there is no record of what was said at the nine bench conferences, appellee argues that the transcript reflects, either explicitly or implicitly, defense counsel's presence at all nine conferences. Appellee also points out that the trial court had specifically

assured Sanchez that his attorney would inform him of what took place at each bench conference. Sanchez tries to cast doubt on appellee's contentions regarding his attorney's presence simply by pointing to the lack of a complete transcript of those conferences. Sanchez does not, however, offer *any* concrete evidence to prove that his attorney was not present at any of the conferences and thus does not satisfy his burden of demonstrating his habeas claim by a preponderance of the evidence. See *Gaines v. Kelly*, 202 F.3d 598, 601 (2d Cir.2000); *see also Galarza v. Keane*, 252 F.3d 630, 636–37 n. 5 (2d Cir.2001) (finding that habeas petitioner did not satisfy burden of demonstrating his claim challenging the prosecutor's striking of a prospective juror when juror's existence was "unclear from the record").

*Feliciano,* Sanchez does not sufficiently demonstrate that his absence from the sidebars frustrated the fairness of the proceedings or resulted in the selection of a biased juror. Therefore, as in *Feliciano,* there was no structural error requiring automatic reversal, and any alleged nonstructural error was harmless. Accordingly, we affirm the judgment of the district court for substantially the same reasons set forth in *Feliciano.* See 223 F.3d at 110–12.[4]

For the reasons stated above, we affirm the order of the district court.

---

4. In view of our holding, there is no need for us to decide whether Sanchez in fact had a "clearly established" federal constitutional right to be present at the voir dire sidebars in this case or whether Sanchez's waiver of his alleged right was improperly coerced.