**Stanford MURDEN, Petitioner–Appellant,**

v.

**Christopher ARTUZ, Respondent–Appellee.**

**Docket No. 02–2024.**

United States Court of Appeals, Second Circuit.

March 13, 2003.

Howard D. Simmons, New York, NY, for Appellant.

Shulamit Rosenblum, Assistant District Attorney (Leondard Joblove, Assistant District Attorney, Charles J. Hines, District Attorney Kings County, on the brief), Brooklyn, NY, for Appellee, of counsel.

Present: MESKILL, CARDAMONE and CABRANES, Circuit Judges.

### SUMMARY ORDER

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and it hereby is **AFFIRMED.**

Petitioner Stanford Murden appeals the District Court's denial of his petition for habeas corpus brought pursuant to 28 U.S.C. § 2254. In his petition, Murden challenges his conviction in the New York State Supreme Court, Kings County, for murder in the second degree.

On February 5, 1982, Murden pleaded guilty to arson in the second degree. During his plea allocution, he stated that, on July 15, 1981, he started a fire at 306 Montauk Avenue in Brooklyn by setting some clothing on fire in a second floor apartment. On June 8, 1982, Murden was sentenced to a term of imprisonment of seven and one half to fifteen years.

On December 6, 1983, Wendy Kornegay died as a result of severe injuries she suffered two and one half years earlier when she jumped out of a third story window in order to escape the fire set by Murden. After Ms. Kornegay's death, the State charged Murden with two counts of murder in the second degree (one count of felony murder and one count of depraved indifference murder). During Murden's trial on the murder charges, the trial judge permitted the court reporter who had transcribed the proceedings at Murden's plea allocution hearing in the arson case to read the transcript of that allocution into the record. Following trial, the jury convicted Murden of felony murder, and he was sentenced to imprisonment for twenty-five years to life.

Murden filed two motions to vacate the judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. In the second of these two motions, Murden argued, *inter alia*, that his arson plea should not have been admitted into evidence at his murder trial. Specifically, he claimed that this plea was involuntary because the judge, the prosecutor, and his defense attorney all failed to inform him that he could be convicted again for another offense that might arise in the future from the July 15, 1981 fire.

On June 19, 1997, the Supreme Court of King's County denied this motion. The Court stated that, because Murden was not advised that his arson allocution could be used against him in a subsequent murder trial, it "would [ordinarily] feel constrained to ... vacate the judgment" based on the authority of *People v. Latham*, 234 A.D.2d 864, 652 N.Y.S.2d 328

(3d Dep't 1996), *rev'd on other grounds,* 90 N.Y.2d 795, 666 N.Y.S.2d 557, 689 N.E.2d 527 (1997).[1] The Court did not vacate the judgment, however, because it determined that any error in admitting Murden's prior plea allocution was harmless: Because the State had also admitted into evidence Murden's videotaped confession to the arson, the Court reasoned that the allocution evidence was "merely duplicative" and, therefore, entirely unessential to his murder conviction.

On April 6, 1998, Murden, acting *pro se* and *in forma pauperis,* filed a petition for habeas corpus in the United States District Court for the Eastern District of New York. His petition raised, *inter alia,* the argument that his prior allocution in the arson case was involuntary and, therefore, improperly admitted into evidence. On September 13, 2001, the District Court denied Murden's petition. *See Murden v. Artuz,* 253 F.Supp.2d 376, 381 (E.D.N.Y. 2001). First, the District Court properly set forth its scope of review: "With respect to the legal question whether the use of petitioner's plea allocution under these circumstances violated his federal constitutional rights, I review [the Supreme Court's] decision only to determine whether it involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States." *Id.* at 381 (citing 28 U.S.C. § 2254(d)(1)).

The District Court properly noted that the United States Supreme Court has set forth a Constitutional requirement that guilty pleas be made voluntarily. *Id.* at 380–381 (quoting *Bousley v. United States,* 523 U.S. 614, 619, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). It recognized, however, that "the Supreme Court has never held that federal due process requires a defendant to be advised that his guilty plea may be used against him in a subsequent criminal prosecution." *Id.* at 381.

The District Court also cited Second Circuit case law making clear that collateral, as opposed to direct, consequences of a guilty plea "need not be explained to the defendant in order to ensure that the plea is voluntary," and that a consequence is collateral unless it is "definite, immediate, and largely automatic." *Id.* at 380–381 (quoting *United States v. Salerno,* 66 F.3d 544, 550–51 (2d Cir.1995) (quoting *United States v. United States Currency,* 895 F.2d 908, 915 (2d Cir.1990))) (internal quotation marks omitted). The District Court concluded that, because the murder charge was contingent upon Wendy Kornegay's death, it was neither a "definite" nor an "automatic" consequence of Murden's plea. *Id.* at 381. Accordingly, the Court determined that, since Murden's arson plea was voluntary under Second Circuit law, the state court's admission of the allocution at his subsequent murder trial could not possibly have constituted an unreasonable application of Supreme Court precedent. *Id.*

The District Court issued a certificate of appealability limited to the question of whether Murden's arson plea was voluntary, and Murden timely appealed on this ground.

---

1. The Third Department held in *Latham* that the admission of a defendant's guilty plea to attempted murder at his subsequent murder trial was a direct consequence of his plea and, therefore, the court's failure to advise him of this potential consequence during the allocution rendered the plea allocution inadmissible at his subsequent murder trial. 234 A.D.2d at 864–65.

We substantially agree with the District Court's analysis of this issue. Moreover, we believe that any possible error in admitting the allocution into evidence during Murden's state murder trial was harmless. *See Arizona v. Fulminante,* 499 U.S. 279, 295, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (holding that the admission of involuntary confessions can constitute harmless error).[2] As the Supreme Court of King's County recognized in its June 19, 1997 denial of Murden's § 440.10 motion, the allocution transcript was entirely unnecessary to Murden's murder conviction because the State also admitted a videotape of Murden confessing to the arson.

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.

**2.** We recognize that there is an open question in this Circuit as to what harmless error standard should be used, after the passage of AEDPA, by a federal court reviewing a state court judgment:

> [O]n direct review, a state appellate court may find a constitutional error harmless only if it is harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Prior to the passage of AEDPA, federal habeas courts reviewing state harmlessness determinations employed a standard less demanding than *Chapman,* asking whether an error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353

(quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). After AEDPA, the question arises whether a federal habeas court should continue to apply *Brecht* or determine instead whether the state court's decision was "contrary to, or involved an unreasonable application of" *Chapman.* 28 U.S.C. § 2254(d)(1).

*Noble v. Kelly,* 246 F.3d 93, 101–02 n. 5 (2d Cir.), *cert denied,* 534 U.S. 886, 122 S.Ct. 197, 151 L.Ed.2d 139 (2001). But we need not decide this issue here because any possible error in this case was harmless under either of the standards discussed in *Noble. See, e.g., Sanchez v. Duncan,* 282 F.3d 78, 82 n. 2 (2d Cir.2002).